**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**No. 5:24-cv-00477**

| | |
|---|---|
| **PERDUE FARMS INC.,**<br><br>        Plaintiff,<br><br>v.<br><br>**JULIE SU**, in her official capacity as Acting Secretary of the U.S. Department of Labor, et al.,<br><br>        Defendants. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

**PLAINTIFF PERDUE FARMS INC.'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiff Perdue Farms Inc. ("Perdue") respectfully moves this court for a preliminary injunction enjoining ongoing unconstitutional administrative proceedings against Perdue to be entered against Defendants Julie Su, in her official capacity as Acting Secretary of the U.S. Department of Labor ("DOL"); Pamela Kultgen, in her official capacity as an Administrative Law Judge ("ALJ") of the Office of Administrative Law Judges ("OALJ") of the U.S. Department of Labor, and the OALJ.

## NATURE OF THE CASE

Perdue has brought this action seeking declaratory relief and to enjoin Defendants from conducting a constitutionally infirm DOL administrative proceeding against Perdue currently pending in the OALJ, *Watts v. Perdue Farms Inc.*, Dkt. No. 2016-FDA-0003 (the "Administrative Proceedings"). In its recent landmark *Jarkesy* decision, the Supreme Court held that parties like Perdue defending against such claims in an administrative proceeding are entitled to a trial by jury in an Article III court. Here, the Seventh Amendment violation is but one of five fatal constitutional flaws (which also include violations of the separation of powers, the Presidential removal power, the nondelegation doctrine, and due process).

In this motion, Perdue seeks to halt the Administrative Proceedings while this Court considers their constitutionality. Having to defend against claims in a constitutionally illegitimate administrative proceeding is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter. Inc. v. F.T.C.*, 598 U.S. 175, 191-92 (2023). Perdue thus is entitled to preliminary injunctive relief to protect Perdue's constitutional rights and avoid further irreparable harm while this Court adjudicates Perdue's claims.

The Administrative Proceedings concern a dispute between Perdue and one of its independent contractors, Craig Watts, who owns and operates C&A Farms in Fairmont, North

Carolina. Perdue is an integrated poultry producer engaged in business throughout the United States. Watts raised chickens for Perdue as an independent contractor under a written contract. He commenced the Administrative Proceedings against Perdue for compensatory damages and other relief under the employee-protection (whistleblower) provisions of the Food Safety Modernization Act, 21 U.S.C. § 399d ("FSMA"), which proceedings are currently pending before ALJ Kultgen. A five-day merits hearing was scheduled to commence on October 28, 2024, to be tried without a jury and without the discovery and evidentiary protections of an Article III court, but the ALJ has extended the deadlines in light of this Motion.

Several weeks ago, the Supreme Court held in *SEC v. Jarkesy* that proceedings such as the Administrative Proceedings are unconstitutional because they violate the Seventh Amendment requirement that legal claims and remedies be tried by a jury if requested by a party. 144 S. Ct. 2117 (2024) ("*Jarkesy II*"). Perdue promptly notified the ALJ of the controlling *Jarkesy* ruling and requested a briefing schedule for motions to dismiss, for leave to amend its answer, and for a stay of discovery pending a ruling on the motions. Despite the extraordinary circumstances, the ALJ refused to issue a stay and to grant leave to amend, and also ruled that ALJs "lack the power and authority to decide constitutional questions" and thus "cannot and will not grant any motion to dismiss on constitutional grounds." Perdue then moved to dismiss and for leave to amend, which motions were denied but the deadlines were extended to allow this Motion to proceed.

Perdue is entitled to preliminary injunctive relief from this Court. *First*, Perdue is likely to succeed on the merits of its constitutional claims that (1) the Administrative Proceedings violate the Seventh Amendment right to a trial by jury; (2) Watts' underlying claims involve private rights and thus must be adjudicated in an Article III court; (3) the ALJ is doubly insulated from the President's removal authority, violating the Take Care Clause of Article II of the U.S. Constitution;

2

(4) vesting a private litigant, Watts, with plenary power to decide whether the proceedings should be heard in an Article I administrative proceeding or in an Article III court with the right to trial by jury and full due process rights violates the nondelegation doctrine and separation of powers under Article I of the Constitution; and (5) the OALJ's lack of subpoena power and other procedural deficiencies violate the Fifth Amendment's Due Process Clause. *Second*, Perdue will suffer irreparable harm by being compelled to participate in unconstitutional proceedings before an ALJ who will not even consider their unconstitutionality. *Third*, the balance of equities tips in Perdue's favor because Perdue is being stripped of its constitutional rights while Defendants stand to lose nothing. Because all three factors weigh strongly in favor of relief, this Court should grant this Motion.

## STATEMENT OF FACTS

Watts commenced the Administrative Proceedings on February 23, 2015 by filing a whistleblower complaint against Perdue with DOL's Occupational Safety and Health Administration ("OSHA"), alleging retaliation by Perdue in violation of the FSMA. Compl. ¶ 30. The filing followed years of his complaints about compensation for growers in the industry and a video showing Watts' raising Perdue chicks in deplorable condition. *Id.* ¶¶ 25-27. The terrible manner in which Watts raised the chicks violated numerous standards and requirement, as confirmed by a report from the non-profit Center for Food Integrity's Animal Care Review Panel in which three separate and independent experts concluded that Watts' complaints about the conditions in his chicken houses were his responsibility. After Perdue learned of the mistreatment of its chicks, Perdue took remedial action to ensure that Watts would take proper care of the chicks in the future. *Id.* ¶ 27. Watts alleges that Perdue's remedial action constitutes retaliation prohibited by FSMA's whistleblower protections. *Id.* ¶ 30.

Years of procedural morass ensued. *See id.* ¶¶ 32-38. In April 2022, the Administrative Proceedings were assigned to ALJ Kultgen. Watts filed a supplemental complaint on April 25, 2022 requesting the following relief:

> (a) "compensatory damages for lost earnings, compensation, and capital resulting from the loss of his employment with contract [sic] with Perdue";
>
> (b) "general and emotional damages for the emotional and mental distress, anxiety and loss of enjoyment of life that he has suffered as a result of the loss of his employment contract with Perdue, the hostile working conditions, and the damage to his reputation described above";
>
> (c) "compensatory damages for the loss of income and expense incurred caused by the … delayed placements of his flocks by Respondent, and for wages paid to his employee as a result of his employee's mandatory attendance at the training session held on January 8, 2014";
>
> (d) attorney's fees and costs, which are "penalties" under the FSMA assessed at the ALJ's discretion; and
>
> (e) "all other relief available at law and equity."

Compl. ¶ 39. On March 11, 2024, Perdue applied for document and deposition subpoenas to explore, *inter alia*, the video evidence forming the heart of Watts' claims. *Id*. ¶ 41. Just four days later, on March 15, 2024, the ALJ quashed Perdue's subpoena requests, ruling that the OALJ lacks statutory authority to issue subpoenas. *Id.* This order denied Perdue basic discovery about a pivotal element of Watts' claims. *Id.* Perdue moved for reconsideration or, in the alternative, for certification for interlocutory appeal, arguing that the lack of vital third-party discovery denied due process. On April 24, 2024, the ALJ denied this motion. *Id.*

Inter-party discovery is underway and is set to conclude on January 17, 2025. A hearing on the merits is set to commence on April 14, 2025. *Id.* ¶ 46.

4

The lack of subpoena power is but one aspect of the inferior rights in the OALJ. Its ALJs "have broad discretion to limit discovery in order to expedite the hearing," 29 C.F.R. § 1987.107(b), so Perdue has not known in advance what discovery it may pursue in mounting its defense. Similarly, neither the Federal Rules of Evidence nor any other "[f]ormal rules of evidence" may be applied by the ALJ at the merits hearing, 29 C.F.R. § 1987.107(d), creating substantial uncertainty as to what evidentiary rules will govern the merits hearing. Compounding this uncertainty, DOL's regulations go so far as to provide that, for good cause or under "special circumstances not contemplated" in the regulations (which are undefined and thus unbounded), both the ALJ and DOL's internal review panel that reviews OALJ decisions, the Administrative Review Board ("ARB"), may waive any rule or regulation governing their respective proceeding. 29 C.F.R. § 1987.115. Thus, the ALJ is not legally bound by *any* procedural rule.

The OALJ's limited discovery and lax procedures are amplified by DOL's potential dual role as both adjudicator and participant/prosecutor. Under FSMA and DOL's implementing regulations, the Administrative Proceedings has several features that potentially tilt the proceedings toward one litigant's side. DOL's regulations confer on DOL the unqualified right to join the proceedings at any time and effectively serve as both litigant/prosecutor and adjudicator/ultimate decision-maker in this single matter. *See* 29 C.F.R. § 1987.108(a)(1) (providing the Assistant Secretary for OSHA with plenary discretion to "participate … at any time at any stage of the proceeding" as either a party or as amicus curiae, including the right to petition for review of an ALJ decision or an ALJ's approval or disapproval of any settlement between the parties). Depending on the stage of the proceedings, a settlement between the parties must be approved by OSHA, the ALJ, or the ARB, respectively. 29 C.F.R. § 1987.111(a), (b), & (d). DOL thus has unlimited power to turn the Administrative Proceedings into a one-sided affair.

5

On June 27, 2024, the Supreme Court issued *Jarkesy II*. It definitively holds that Article I administrative law judges cannot adjudicate *legal* claims and remedies, *i.e.*, claims arising at law like Watts' FSMA claims in the Administrative Proceedings, because the Seventh Amendment requires that they be tried by a jury if so requested. *Jarkesy II*, 144 S. Ct. at 2127-28 (holding that an SEC ALJ cannot adjudicate securities-fraud enforcement claims brought by the SEC because those claims sound in law and, under the Seventh Amendment, are triable by jury). Notably, the Supreme Court considered but did not disturb rulings by the Fifth Circuit that (i) SEC ALJs violate Article II's Take Care Clause because the ALJs are doubly insulated from the President's removal power; and (ii) that the SEC's broad discretion under the securities statutes to proceed in either an Article I or Article III tribunal violates the nondelegation doctrine and separation of powers because Congress did not provide any intelligible principle to guide that election. *See Jarkesy v. SEC*, 34 F.4th 446, 459-63, 463-65 (5th Cir. 2022) ("*Jarkesy I*"), *aff'd and remanded*, 144 S. Ct. 2117 (2024). On July 19, 2024, Perdue notified the ALJ of *Jarkesy I* and *II* and requested a suspension of discovery until the ALJ could decide their impact on the proceedings. Compl. ¶ 42. On July 22, the parties jointly moved to extend discovery deadlines. The next day, July 23, the ALJ issued a cursory order stating that ALJs lack authority to hear a constitutional challenge, notwithstanding the potential impact of *Jarkesy*: "I cannot and will not grant any motion to dismiss on constitutional grounds." Compl. ¶ 42. She allowed Perdue to move to dismiss on constitutional grounds—but only to preserve grounds for appellate review—and refused to stay discovery. *Id.*

On July 29, 2024, Perdue moved both to dismiss and for leave to amend its answer and add a jury-trial demand, raising the three constitutional grounds decided in *Jarkesy I* and *II*. *Id.* ¶ 44. ALJ Kultgen denied both motions on August 8, 2024, *id.* ¶ 45, forcing Perdue to bring the instant

6

action.  She did, however, extend the discovery deadline to January 17, 2025 and the hearing date to April 14-18, 2025 to allow time for this Court to decide this Motion.  *Id.* ¶ 46.

Perdue's Complaint seeks a declaration that the Administrative Proceedings violate (1) the Seventh Amendment right to jury trial (Count I); (2) Article III of the Constitution, where judicial power is solely vested, by using an Article I tribunal to adjudicate private rights (Count II); (iii) the Take Care Clause in Article II of the Constitution by impeding the President's removal power over DOL ALJs (Count III); (iv) the nondelegation doctrine and the separation of powers by conferring a private party, Watts, with plenary and unilateral authority to decide whether the claims will be tried in an Article I or an Article III tribunal without any "intelligible principle" to limit his discretion (Count IV); and (5) the Due Process Clause of the Fifth Amendment, which prohibits the adjudication of rights in a fundamentally unfair proceeding, such as the lack of discovery of key allegations in the case (Count V).  Perdue also seeks to enjoin Defendants from taking further action in the unconstitutional Administrative Proceedings.

## **ARGUMENT**

### **I.     This Court Has Subject-Matter Jurisdiction over Perdue's Claims.**

Under the Supreme Court's recent decision in *Axon*, this Court has subject-matter jurisdiction over Perdue's challenges to the unconstitutional structure of the Administrative Proceedings.  *See* 598 U.S. at 195.  As *Axon* explains, "[t]he ordinary statutory review scheme does not preclude a district court from entertaining" constitutional challenges to the structure of administrative agencies.  *Id.* at 180.  As was the case with the two sets of administrative proceedings at issue in *Axon* (FTC and SEC), subjecting Perdue to "unconstitutional agency authority" imposes a "here-and-now injury" that "is impossible to remedy once the [administrative] proceeding is over."  *Id.* at 191 (describing "the 'here-and-now' injury of subjection to an unconstitutionally structured decision making process").  Thus, unless the

7

Administrative Proceedings are enjoined, Perdue "will lose [its] rights not to undergo the complained-of agency proceedings." *Id.* at 192.

## II. Perdue Is Entitled to a Preliminary Injunction.

To obtain preliminary injunctive relief, Perdue must show "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the government is the defendant, as here, the third and fourth elements merge. *Id.* at 368. And where there is a "likely constitutional violation, the irreparable harm factor is satisfied and the remaining two factors "favor[]" a preliminary injunction. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc) (reversing denial of preliminary injunction). Each of these factors weighs in favor of a preliminary injunction here. The Administrative Proceedings should be preliminarily enjoined to avoid the immediate and irreparable harm from being subjected to unconstitutional adjudication before this Court has had a chance to decide Perdue's constitutional challenges.

### A. Perdue Has a Substantial Likelihood of Success on the Merits.

Both the law and the facts overwhelmingly support Perdue's five constitutional challenges, showing much more than the required substantial likelihood of success for at least one claim.[1]

---

[1] Although Perdue will likely succeed on each of its constitutional claims, injunctive relief should be granted if Perdue establishes a likelihood on *any* of the claims. *See, e.g.*, *Roe v. Dep't of Def.*, 947 F.3d 207, 234 (4th Cir. 2020) (granting preliminary injunction where "[p]laintiffs have demonstrated a likelihood of success of the merits of at least one claim"); *League of Women Voters v. N.C.*, 769 F.3d 224, 237-38 (4th Cir. 2014) (granting preliminary injunction where plaintiffs were likely to succeed on one claim, as plaintiffs need not establish likelihood of success on all claims).

**1.     Perdue Likely Will Succeed on Its Seventh Amendment Claim (Count I).**

Perdue is highly likely to succeed on its claim that the Administrative Proceedings deprive Perdue of its Seventh Amendment right to a jury trial.

The FSMA itself provides that Watts' whistleblower claims are triable by jury. Under FSMA, complainants may kickout their claims to a federal district court for adjudication if either OSHA does not provide an initial decision within 210 days of the filing of the complaint, or again within 90 days after the Secretary of Labor renders her final decision in the matter. 21 U.S.C. § 399d(b)(4)(A). If the complainant files a federal action, *either party may elect a jury trial. Id.* Thus, Congress itself has determined that Watts' whistleblower rights and remedies are triable by a jury and thus are legal in nature, which, per *Jarkesy II*, triggers Seventh Amendment protection. That fact alone should settle the question. Congress has spoken.[2]

But even if a jury-trial right were not expressly included in the FSMA, *Jarkesy II* resolves any question that the traditional test for applying the Seventh Amendment requires a jury trial of Watts' claims. A two-part test, followed by a narrow exception, applies: (1) whether the claims have a late-18th century English common-law analogue; (2) more importantly, whether the requested remedies sound primarily in law or equity; and (3) if the two-part test is satisfied and the claims are deemed legal, whether the claim falls within a limited "public right" exception for a class of cases that are so inherently public in nature that Congress may assign them for special treatment by an Article I forum. *See Jarkesy II*, 144 S. Ct. at 2128-34. Watts' claims clearly

---

[2] Of course, Congress provided that the claims could be tried administratively as well as judicially. Under *Jarkesy II*, that scheme is no longer permissible. So long as the claims are triable by jury, they must be brought in an Article III court where a jury trial may be elected, without even applying the Seventh Amendment tests. *See Feltner v. Columbia Pics. Television, Inc.*, 523 U.S. 340, 345 (1998) ("Before inquiring into the applicability of the Seventh Amendment, we must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'") (bracketed text in original) (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)). Unlike *Feltner*, FSMA shows clear "'congressional intent to grant ... the right to a jury trial' … on an award of statutory damages." *Id.*

satisfy the two-part test, and no public-right exception applies.  (1) They are analogous to common-law breach-of-contract and tort claims for wrongful discharge.  (2) Watts seeks emotional-distress, lost profits, and other compensatory damages and penalties that plainly sound in law, not equity.  (3) The "public-rights" exception does not apply because Watts' claims are quintessentially private: they seek to enforce contractual rights and recover compensatory damages.  The claims thus amount to a suit at common law and entitle Perdue to a jury trial, *Jarkesy II,* 144 S. Ct. at 2128-31, 2139, rendering the Administrative Proceedings facially unconstitutional.

### a. Watts' FSMA Claims Are Analogous to 18th Century Common-Law Claims for Breach of Contract and Tort.

Watts' retaliation claim under the FSMA is analogous to common-law contract and tort claims.  He alleges that he was "discharged or otherwise discriminated against" due to activity protected under the FSMA.  *See generally* Colaizzi Decl. Ex. 9, Watts Supp. Compl.; 21 U.S.C. § 399d(a), (b).  This claim resembles late 18th-century English common-law breach-of-contract and tort claims for compensatory damages, as reflected by modern-day claims for wrongful discharge and breach of an employment contract. *See, e.g., Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (discussing, in non-Seventh Amendment context, "the common-law background to [] antiretaliation claim," particularly "wrongful discharge of employment").

Some courts analogize to traditional breach-of-contract actions.  *See, e.g., Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) ("Lebow's unlawful discharge claim [of retaliation for union organizing prohibited by the Railway Labor Act] is comparable to a common-law action for breach of an employment contract" and is entitled to trial by jury); *Waldrop v. S. Co. Servs., Inc.*, 24 F.3d 152, 156 (11th Cir. 1994) (finding unlawful-discharge claim under Rehabilitation Act analogous to common-law breach-of-contract action).  Others hold that a federal statutory claim for monetary damages caused by the violation of a legal duty imposed by

the statute should be treated as a tort, irrespective of its novel statutory nature. *See, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 195 (1974) (affirming jury-trial right for fair-housing discrimination claim under Title VII, reasoning that "[a] damages action under the statute sounds basically in tort," and recognizing that the claim "is analogous to a number of tort actions recognized at common law").

In either case, the fact that Watts' retaliation claim under the FSMA arises through a statutory scheme requiring initial filing in an administrative agency is immaterial. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency[.]" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989) (requiring a jury trial for fraudulent conveyance claims brought in U.S. Bankruptcy Court). What matters is that Watts' FMSA claim has common-law analogues sounding in contract and tort, meeting the first *Jarkesy* element.[3]

### b. Watts Seeks Compensatory Damages and Other Legal Relief.

The second prong of the test, whether the requested relief is legal or equitable, is much "more important." *Jarkesy II*, 144 S. Ct. at 2129. And here, almost all of Watts' requested remedies are legal in nature, a fact that, as in *Jarkesy II*, is "all but dispositive." *Id.*

This Court need look no further than Watts' supplemental complaint in the Administrative Proceedings, which seeks "general and emotional damages for the emotional and mental distress, anxiety and loss of enjoyment of life that he has suffered as a result of the loss of his employment contract with Perdue, the hostile working conditions, and [] damage to his reputation." Compl.

---

[3] The Seventh Amendment's reference to actions at "common law" includes statutes. *See Jarkesy II*, 144 S. Ct. at 2128 (explaining that the Amendment's reference to "common law" was "in contradistinction to equity, and admiralty, and maritime jurisprudence," so "[t]he Amendment therefore 'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume'") (quoting *Curtis*, 415 U.S. at 194 ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.")).

¶ 39 (quoting Watts Supp. Compl. ¶ 81).  Damages for emotional distress, lost enjoyment of life, and reputational harm are quintessential legal compensatory damages, no different from those available in tort.  They are triable by jury under settled Seventh Amendment jurisprudence.  *See, e.g.*, *Jarkesy II*, 144 S. Ct. at 2129 ("While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993))); *Wooddell v. IBEW, Loc. 71*, 502 U.S. 93, 98 (1991)) ("A personal injury action is of course a prototypical example of an action at law, to which the Seventh Amendment applies.").  This claim arises from FSMA itself, which allows a court to award "compensation for any special damages," 21 U.S.C. § 399d(b)(4)(B)(iii), a term that courts have held to allow emotional-distress and reputational-harm damages in other schemes.[4]

Watts' request for "compensatory damages" to his business in the form of lost income and incurred expenses from delayed placement of flocks, *i.e.*, the equivalent of a lost-profit claim and incurring extra salary cost for an employee, *see* Compl. ¶ 39, also is a clearly legal remedy.  *See Goettsch v. Goettsch*, 29 F. Supp. 3d 1231, 1242 (N.D. Iowa 2014) (finding that compensatory damages are legal in nature when they focus on "plaintiffs' perceived losses and harm."); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 642-43 (S.D.N.Y. 2005) ("a jury trial was warranted in this case to the extent that [plaintiff's] remaining claims sought compensation in the form of damages under the legal remedy of lost profits"), *aff'd*, 469 F.3d 284 (2d Cir. 2006); *cf. ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1181 (10th Cir. 2011) (holding that "[t]he amount

---

[4] *See, e.g.*, *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 672 (4th Cir. 2015) (finding that "special damages" in the Sarbanes-Oxley whistleblower protections includes emotional distress) (citing, *inter alia*, *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000) (finding facts sufficient for jury trial of alleged emotional distress under False Claims Act's provision for "special damages" in similar statutory scheme of whistleblower protections)).

12

of lost profits was squarely within the province of the jury" and thus was protected by the Seventh Amendment against judicial additur).

Watts also seeks backpay in the form of "compensatory damages for lost earnings, compensation, and capital resulting from the loss of his employment with contract [sic] with Perdue." Compl ¶ 39 (quoting Watts Supp. Compl. ¶ 80). Restitution for lost earnings and compensation is legal, not equitable, where it is "but a free standing claim for money damages" and is not seeking a discrete pool of funds held by defendant that "belong to" the plaintiff. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214, 218 n.4 (2002); s*ee also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character."); *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 504 (4th Cir. 2023) ("Plaintiffs that seek 'merely personal liability upon the defendants to pay a sum of money' ask for legal, not equitable, relief").

Though the decisions vary depending on the statutory scheme, backpay is typically considered legal, rather than equitable. *See, e.g., Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) ("[T]he remedy of backpay sought in this duty of fair representation action is legal in nature."); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 832-33 (4th Cir. 1994) (recognizing a jury-trial right because "an award in the amount of backpay" under the Rehabilitation Act "would not be characterized as an equitable remedy"); *Pons v. Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977) ("monetary award for back wages is a traditional legal remedy" for an ADEA violation), *aff'd*, 434 U.S. 575 (1978); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 656 (3d Cir. 2007) ("The remedy they seek is thus akin to 'back pay,' which is not an equitable remedy within the meaning of the [ERISA] statute. … 'Back pay claims do not differ remedially from the personal injury claim for lost wages, or the contract claim for past wages due, for example ... [s]o,

while reinstatement is clearly equitable as a form of injunctive relief, back pay seems to be just as clearly legal.'" (quoting 2 Dan B. Dobbs, *Law of Remedies* § 6.10(5) at 226 (2d ed. 1993) (footnotes omitted))); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 964–65 (9th Cir. 2002) (explaining that backpay under the Family Medical Leave Act is a legal remedy).

In sum, most of the remedies sought by Watts are legal in nature,[5] meeting the second, "more important" prong of the Seventh Amendment's test for the right to trial by jury.

### c.  The Public-Rights Exception Does Not Apply.

*Jarkesy II* effectively shuts the door on the third factor—the narrow exception for legal claims that advance a "public right."  *See* 144 S. Ct. at 2132 ("If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory").  If the rights at issue are private, *i.e.*, they involve claims commonly litigated by private parties, the exception does not apply.  That is the case here: Watts is a private party; his claims involve a dispute over a contract with a private party; and he seeks remedies that are entirely personal to him without any direct financial benefit to the public.  His claims are quintessentially private.

*Jarkesy II* makes clear that the exception does not apply.  There, not even the SEC's dual role as prosecutor *and* decisionmaker in adjudicating securities fraud triggered the public-rights exception.  *See id.* at 2135.  If SEC-brought securities-fraud claims are not public, then surely Watts' claims seeking compensation for emotional distress are not public, either.

### 2.  Perdue Likely Will Succeed on Its Article III Claim (Count II).

Perdue also is likely to succeed on its claim that the Administrative Proceedings violate Article III of the Constitution, where judicial power is solely vested, by using an Article I tribunal

---

[5] The FSMA also provides for a "Penalty" of attorneys' fees and costs.  21 U.S.C. § 399d(b)(3)(C).  Civil penalties are considered legal for Seventh Amendment purposes. *See Jarkesy II*, 144 S. Ct. at 2129.

to adjudicate private rights. The Constitution requires "the judicial power of the United States" to be vested in Article III courts, and Congress may not confer judicial power "on entities outside Article III." *Stern v. Marshall*, 564 U.S. 462, 469, 484 (2011). Pursuant to this fundamental limitation, "cases involving private rights … may not" be removed from Article III courts. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014).

As discussed above, Watts has brought legal claims (wrongful discharge) seeking legal relief (compensatory damages) for alleged violations of essentially private rights. Because lawsuits seeking money damages "implicate the core private right to property[,]" *Axon*, 598 U.S. at 204 (Thomas, J., concurring), they must be brought in an Article III judicial forum and cannot be heard by an Article I administrative tribunal. *Id.* By adjudicating the claims in an Article I administrative agency, the Administrative Proceedings usurp what the Constitution leaves to the exclusive jurisdiction of Article III courts. This is a clear violation of the separation of powers.

### 3. Perdue Likely Will Succeed on Its Removal-Power Claim (Count III).

Perdue also is likely to succeed on its claim that the Administrative Proceedings violate Article II's Take Care Clause. *See Jarkesy I*, 34 F.4th at 463-65.

Article II provides that the President must "take Care that the Laws be faithfully executed," U.S. Const. Art. II, § 3, vesting the President with sole "authority to remove those who assist him." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010). The President may not be "restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States[.]" *Id.* at 484. "[S]uch multilevel protection from removal is contrary to Article II's vesting of the executive power in the President." *Id.*

Here, the OALJ's ALJs are unconstitutionally shielded from presidential oversight because they are doubly insulated from the presidential removal power: they can be removed *only* for cause

and *only* by the Merit Systems Protection Board ("MSPB"), whose members can be removed *only* for cause by the President. Specifically, the Secretary of Labor may remove the ALJ "only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). MSPB members may be removed by the President only for cause, *i.e.*, they "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This double layer of for-cause removal violates the Take Care Clause, which vests the removal power with the President "alone." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020). Under Article II, the President must have adequate "authority to remove those who assist him in carrying out his duties," and, although one layer of insulation from Presidential plenary power is acceptable, two layers are not. *Free Enter. Fund*, 561 U.S. at 514-15. *Jarkesy I* held that double insulation of SEC ALJs is unconstitutional, reflecting a Circuit split. *Contrast Jarkesy I*, 34 F.4th at 463-65; *Fleming v. USDA*, 987 F.3d 1093, 1123 (D.C. Cir. 2021) (Rao, J., dissenting), *with Leachco, Inc. v. CPSC*, 103 F.4th 748, 764 (10th Cir. 2024); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136 (9th Cir. 2021). DOL ALJs lack removal power like SEC ALJs and thus, if *Jarkesy I* is correct, are similarly unconstitutional.

The Fourth Circuit has acknowledged but not yet resolved this circuit split, ruling instead that, when vacatur of an ALJ ruling is sought, challengers must first show specific as-applied injury resulting from the diminished removal power. *See K & R Contractors LLC v. Keene*, 86 F.4th 135, 148-49 (4th Cir. 2023). This case does not involve vacatur, however. Given *Axon*'s holding of a "here-and-now" injury from proceeding before ALJs in violation of the Take Care Clause, *Axon* strongly indicates that *Keene* should not apply where an ongoing injury is occurring.[6] But

---

[6] The Supreme Court has long recognized that violations of separation of powers regarding a removal power constitute actionable "here-and-now" injuries because they create an unnatural imbalance that affects (taints) the decision-making of the official whose decisions are at issue. *See Seila Law*, 591 U.S. at 212 (discussing cases); *Browsher v. Synar*, 478 U.S. 714, 727 n.5 (1986) (explaining that unconstitutional

even if more injury were required, that test is met by the ALJ's refusal to consider the constitutionality of the proceedings, violating her oath of office by forsaking the solemn duty to follow and apply the laws and Constitution of the United States, which, pursuant to 5 U.S.C. § 3331, all officers of the United States except the President must swear.[7]  *See Keene*, 86 F.4th at 145 ("each of the three branches of our federal government has an obligation to interpret the Constitution," though agencies lack power to enjoin enforcement of unconstitutional statutes). Until Perdue advised her of this impending action, the ALJ refused to stay discovery.  She has denied Perdue leave to amend its complaint to add *Jarkesy* defenses and request a jury trial.  This flat refusal to consider a dispositive recent Supreme Court decision going to the heart of her jurisdiction is a prototypical injury redressable by the removal power.

### 4.    Perdue Likely Will Succeed on Its Nondelegation Claim (Count IV).

Perdue also is likely to succeed on its claim that the Administrative Proceedings violate the nondelegation doctrine and separation of powers under Article I of the Constitution.

---

vesting in Congress of power to remove the Comptroller General is a here-and-now injury even if the power has not yet been exercised).

[7] The ALJ erred in ruling that she cannot consider constitutional challenges.  *Keene* affirms that agencies have a duty to interpret the Constitution, which should include the power to dismiss a complaint for lack of constitutional jurisdiction, but cannot enjoin enforcement of an unconstitutional statute, which is not at issue.  The ALJ ruled that she "lack[s] the power and authority to decide constitutional questions" and thus "cannot and will not grant any motion to dismiss on constitutional grounds" and quoted dicta in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994), that adjudication "'of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.'" Colaizzi Decl. Ex. 17 at 2.  She failed to mention *Thunder Basin*'s next sentence, which states, "This rule is not mandatory, however…."  *Thunder Basin*, 510 U.S. at 215.  Perdue provided extensive briefing to show that her authority does exist, especially after *Thunder Basin*, all of which was ignored in the ALJ's final ruling.  *See* Colaizzi Decl. Ex. 18 (quoting, *inter alia*, *Bennett v. SEC*, 844 F.3d 174, 184 (4th Cir. 2016) ("[T]he Supreme Court has similarly rejected the drawing of jurisdictional lines between agencies and federal courts based on the nature of constitutional claims.") (citing *Elgin v. Dep't of Treasury*, 567 U.S. 1, 16 (2012); *Rydie v. Biden*, No. 21-2359, 2022 WL 1153249, at *7 (4th Cir. Apr. 19, 2022) (affirming that the principle "is not mandatory" and that "where an independent body—here, the [MSPB]—hears constitutional challenges, it makes little sense to hamstring agencies by limiting the scope of arguments they may consider") (internal quotations omitted)).

Under the nondelegation doctrine, Congress may not delegate its legislative power to a non-legislative party to determine whether a matter belongs in an Article I or Article III court without providing an "intelligible principle" to guide the exercise of that power. *See Jarkesy I*, 34 F.4th at 459, 462-63 (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). Here, the FSMA provides no such "intelligible principle" and instead allows *a private litigant*, Watts, the unilateral, plenary, and unfettered power to decide whether his claims will be heard in an Article I court, or whether to kickout his claims to an Article III court (with the attendant due-process protections such as third-party subpoena power, the Federal Rules of Evidence, and guarantee of the right to a jury trial), without affording such power to his adversary, Perdue. FSMA accords Watts this unilateral kickout power *twice*, first if OSHA does not reach a final decision on his claims within 210 days of the filing of complaint, and again for 90 additional days after the Secretary of Labor issues her final decision. 21 U.S.C. § 399d(b)(4)(A). Congress failed to provide any standard, guidance, or intelligible principle on how Watts should exercise his discretion. By delegating to a *private* third party (Watts), the power to choose (twice, at separate junctures) whether to move his claims to an Article III court, Congress exceeded its Article II power.

*Jarkesy I* held that Congress violated the separation of powers by delegating to the SEC "unfettered authority to choose whether to bring enforcement actions in Article III courts or within the agency." 34 F.4th at 459. By giving this authority to a private party, FSMA more egregiously violates the nondelegation doctrine than did the securities laws at issue in *Jarkesy*, where the third party was a government agency (the SEC). It is difficult to imagine a more unfair advantage than allowing the party who allegedly is seeking millions of dollars in damages from another party to select whether the factfinder will be a jury or an ALJ; whether the defendant party will be able to get key discovery from the complainant's principal source(s) of evidence; whether the sitting judge

18

meets constitutional qualifications and has the powers available under Article III; and whether the administrative agency hearing the matter will have the right to engage and participate as prosecuting party if it so elects. It is even more remarkable that FSMA accords that party the same option again, *after* a final decision by the Secretary, effectively giving him, but not his adversary, the right to wipe out an adverse Article I ruling and redo the litigation *de novo* in an Article III court. The lack of any intelligible principle to guide this unfettered discretion violates separation of powers under the basic strictures of the nondelegation doctrine.

### 5.    Perdue Is Likely to Succeed on Its Due-Process Claim (Count V).

Finally, Perdue is also likely to succeed on its claim that the Administrative Proceedings violate the Fifth Amendment's Due Process Clause.

To begin, the ALJ ruled that she lacks statutory power to issue third-party subpoenas necessary for Perdue to investigate the key evidence in the Administrative Proceedings: the video footage filmed on Watts' farm that constitutes the heart of Watts' retaliation claims against Perdue. Compl. ¶ 41. This order effectively denied Perdue basic discovery about the preparation and production of the pivotal element in Watts' claims. Due process is denied when an ALJ relies upon evidence as the basis for its decision yet denies a request to subpoena documents or testimony directly related to that evidence and potentially undermines it. *See Souch v. Califano*, 599 F.2d 577 (4th Cir. 1979) (holding that an ALJ's failure to issue a subpoena for testimony and documents underlying key adverse evidence violates claimant's due process rights). Whether the ALJ is correct about her limited power is not the issue; any inability to issue vital third-party subpoenas facially violates Perdue's due-process rights by materially impairing its ability to defend itself.

The lack of subpoena power compounds other disparities. DOL ALJs have broad discretion to limit discovery. 29 C.F.R. § 1987.107(b). Substantial uncertainty as to what evidentiary rules will control: neither the Federal Rules of Evidence nor any other "[f]ormal rules

19

of evidence" may be applied.  29 C.F.R. § 1987.107(d).  Both the ALJ and the ARB have full power to waive any rule or regulation governing their respective proceedings merely upon a finding of good cause or "special circumstances not contemplated" in the regulations (which are undefined and thus unbounded).  29 C.F.R. § 1987.115.  The ALJ has ruled that she lacks authority to consider fundamental constitutional questions concerning subject-matter jurisdiction, in stark contrast to an Article III court's inherent judicial authority to determine whether actions by Article I officers violate the Constitution, which *Marbury v. Madison* described as "the very essence of judicial duty."  5 U.S. 137, 178 (1803).  Requiring years of illegitimate unconstitutional litigation because the tribunal claims to lack power to halt them is the epitome of unfairness.

These disparities are compounded by DOL's right under its own regulations to join the proceedings and serve as both litigant/prosecutor and adjudicator/ultimate decision-maker.  Under 29 C.F.R. § 1987.108(a)(1), the Assistant Secretary for OSHA may "participate as a party or as amicus curiae at any time at any stage of the proceeding," including the right to petition for review of an ALJ decision or an ALJ's approval or disapproval of any settlement.

FSMA further violates due process by vesting the complainant, but not the respondent, with the right to move the action to federal court and proceed *de novo*.  21 U.S.C. § 399d(b)(4)(A). Even worse, the FSMA provides the complainant, but not his adversary, with the plenary right to do so after a final decision by the Secretary.  *Id.*  Giving only one party the right to a second bite and a complete do-over after an adverse result is as unfair as it gets.

The cumulative impact of these disparities is not mitigable by eventual limited judicial review in an Article III circuit court of appeals.  As *Axon* itself makes clear, defending whistleblower claims without even the elemental power to subpoena evidence is not remediable.

**B.** **Perdue Will Suffer Irreparable Harm without a Preliminary Injunction.**

Perdue will suffer immediate and irreparable harm absent injunctive relief. *See Axon*, 598 U.S. at 191 ("[B]eing subjected to unconstitutional agency authority ... by an unaccountable ALJ ... is a here-and-now injury" that is "***impossible to remedy once the proceeding is over, which is when appellate review kicks in***.") (internal quotation marks omitted, emphasis added). An appellate court "could of course vacate the [agency]'s order[,] [b]ut [a] separation-of-powers claim is not about that order; indeed, [Perdue] would have the same claim[s] [if] it won before the agency." *Id.* As in *Axon*, Perdue's claims here are "about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* "[J]udicial review of [Perdue's] structural constitutional claims would thus come too late to be meaningful." *Id.* at 175. *Axon* establishes irreparable harm if the Administrative Proceedings are not enjoined.

This result reflects the black-letter rule that *any* deprivation of constitutional rights constitutes an irreparable injury warranting injunctive relief. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (ruling that a loss of constitutionally guaranteed rights "for even minimal periods of time, unquestionably constitutes irreparable injury.").

In addition to the facial harm that Perdue would suffer by undergoing an unconstitutional agency process, the Complaint shows ongoing as-applied harms, such as proceeding to an evidentiary hearing on the merits without the right to discovery on pivotal facts in the case. Engaging in dispositive fact-finding on Watts' allegations without the benefit of full discovery is clear injury. An adverse finding resulting from such a marred process could impact Perdue's reputation and market standing. For these reasons, Perdue's harm from an unconstitutional agency process is immediate and cannot be remedied by an eventual appeal to the Fourth Circuit years

21

down the road following the ALJ adjudication, internal DOL review at the ARB level, and, potentially, further review by the Secretary.

**C.**     <u>The Balance of the Equities and the Public Interest Favor An Injunction.</u>

When, as here, a constitutional violation is likely, the balance of the equities and the public interest are satisfied because the OALJ and DOL are "in no way harmed by issuance of a preliminary injunction which prevents [them] from" using an adjudication process "likely to be found unconstitutional," and "the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346; *see also Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[U]pholding constitutional rights surely serves the public interest."). Conversely, an injunction would not cause substantial harm to others because, "[i]f anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013). Because Perdue is likely to succeed on the merits of its constitutional challenges, a preliminary injunction is clearly in the public interest.

To be clear: this Motion asks only to enjoin the Administrative Proceedings pending the Court's determination of Perdue's constitutional challenges to them. Even if the Court ultimately were to rule in Defendants' favor, the Administrative Proceedings could resume without any major disruption. As the Administrative Proceedings have already taken more than eight years, a short further delay to decide their constitutionality to address a landmark Supreme Court decision hardly constitutes unacceptable disruption. Indeed, at one point, the case lay dormant in the OALJ for 1½ years without any action occurring (and without any complaint by Watts about the inactivity). Perdue thus stands to suffer constitutional deprivation, but Watts and Defendants do not stand to lose anything. The balance of equities and public interest point in one direction: granting an injunction so that the Court may decide the constitutional issues that the OALJ will not address.

## CONCLUSION

For the foregoing reasons, Perdue respectfully requests that the Court enter a preliminary

injunction to halt the Administrative Proceedings pending its resolution of this action.

Dated: August 20, 2024                               Respectfully submitted,

_____/s/ Margaret Santen_____
Margaret Santen
N.C. Bar No. 52927
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
704-405-3119
maggie.santen@ogletree.com

/s/ Vanessa N. Garrido_____

Vanessa N. Garrido
N.C. Bar No. 53470
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8529 Six Forks Road, Suite 600
Raleigh, NC 27615
919-789-3194
vanessa.garrido@ogletree.com

*Local Civil Rule 83.1(d) Attorneys for Plaintiff*

Roger A. Colaizzi (notice of special appearance  to
be filed)
Kristin M. Koger (notice of special appearance to
be filed)
Venable LLP
600 Massachusetts Ave., N.W.
Washington, DC 20001
02-344-4000
202-344-8300 (fax)
rcolaizzi@venable.com
kmkoger@venable.com

Mitchell Y. Mirviss (notice of special appearance to
be filed)
Venable LLP
750 E. Pratt St., Suite 900
Baltimore, MD 21202
410-244-7400
410-244-7742 (fax)
mymirviss@venable.com

*Counsel for Plaintiff Perdue Farms Inc.*

24