**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

|  |  |
|---|---|
| PERDUE FARMS INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor, *et al.*,<br><br>                Defendants. | Civil Action No. 5:24-cv-00477-BO |

## GOVERNMENT DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dated: March 12, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General

JULIE STRAUS HARRIS
CHRISTOPHER R. HALL
Assistant Branch Directors

*/s/ Andrew J. Rising*
ANDREW J. RISING
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12520
Washington, DC 20005
(202) 514-0265
Andrew.J.Rising@usdoj.gov

*Counsel for the Government Defendants*

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................................1

BACKGROUND ..............................................................................................................................2

I.       Statutory and Regulatory Framework..........................................................................2

II.      Craig Watts' Whistleblower Claim................................................................................3

III.     Procedural History .........................................................................................................4

LEGAL STANDARDS .....................................................................................................................5

ARGUMENT ....................................................................................................................................6

I.       This Court Lacks Jurisdiction Over Perdue's Claims....................................................6

         A.   The FSMA Expressly Limits District Court Jurisdiction............................................6

         B.   Perdue's Claims are Barred by the Statute of Limitations...........................................9

II.      Counts 1 and 2 Should be Dismissed Because Perdue Failed to Plausibly Allege that DOL's Adjudication of FSMA Whistleblower Claims Violates the Seventh Amendment or Article III..11

         A.   The Seventh Amendment Does Not Apply Because the Suit is Equitable in Nature ..............11

              1.    The "make whole" relief sought by Watts is equitable in nature.........................12

              2.    Watts' FSMA whistleblower claim is not analogous to a cause of action at common law.................................................................................................14

         B.   DOL's Administrative Adjudication of Public Rights Under Section 399d is Consistent With Both the Seventh Amendment and Article III.......................................16

III.     Count 3 Should be Dismissed Because Perdue Failed to State a Plausible Removal Claim .........21

IV.      Perdue Failed to Plausibly Allege a Nondelegation Claim..........................................24

         A.   Perdue Lacks Standing for its Nondelegation Claim..................................................24

         B.   Perdue's Nondelegation Claim Fails on the Merits ...................................................25

              1.    Separation of powers principles are not implicated here. ...................................25

              2.    The FSMA does not offend the private nondelegation doctrine..........................26

V.       Perdue Failed to Plausibly Allege a Due Process Claim...............................................29

CONCLUSION.................................................................................................................................31

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Adams v. Bain,*
  697 F.2d 1213 (4th Cir. 1982) ...................................................................................................... 5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................................................... 5

*Ass'n of Am. R.R. v. U.S. Dep't of Transp.,*
  721 F.3d 666 (D.C. Cir. 2013), vacated and remanded on other grounds, 575 U.S. 43 (2015) ............. 27

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n,*
  430 U.S. 442 (1977) .................................................................................................................... 17

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ............................................................................................................. 6, 7, 20

*Azimov v. DHS,*
  No. 22-56034, 2024 WL 687442, at *1 (9th Cir. Feb. 20, 2024) ............................................. 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................................................... 5

*Berkley v. Mountain Valley Pipeline, LLC,*
  896 F.3d 624 (4th Cir. 2018) ...................................................................................................... 19

*Blankenship v. Fin. Indus. Regulatory Auth.,*
  No. CV 24-3003, 2024 WL 4043442 n.3 (E.D. Pa. Sept. 4, 2024) ....................................... 8, 9

*Bohon v. FERC,*
  92 F.4th 1121 (D.C. Cir. 2024) .................................................................................................... 7

*Bosse v. Oklahoma,*
  580 U.S. 1 (2016) ........................................................................................................................ 17

*Bowles v. Russell,*
  551 U.S. 205, 212-13 (2007) ........................................................................................................ 6

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ........................................................................................................................ 26

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022), rev'd on other grounds, 598 U.S. 623 (2023) ................................. 22, 23

*Carter v. Carter Coal Co.,*
  298 U.S. 238 (1936) .................................................................................................................... 27

ii

*CBW Bank v. FDIC,*
  No. 24-2535-DDC-BGS, 2025 WL 671567 (D. Kan. Mar. 3, 2025) ....................................................... 7

*CFPB v. Law Offs. of Crystal Moroney, P.C.,*
  63 F.4th 174 (2d Cir. 2023) ............................................................................................................ 22

*Chau v. SEC,*
  72 F. Supp. 3d 417 (S.D.N.Y. 2014) .......................................................................................... 9, 31

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,*
  494 U.S. 558 (1990) .................................................................................................................. 12, 14

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
  526 U.S. 687 (1999) ........................................................................................................................ 15

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................................................................. 25, 30

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB,*
  51 F.4th 616 (5th Cir. 2022), rev'd on other grounds, 601 U.S. 416 (2024) .................................. 22, 23

*Collins v. Yellen,*
  594 U.S. 220 (2021) ............................................................................................................ 21, 22, 24

*Commodity Futures Trading Comm'n v. Schor,*
  478 U.S. 833 (1986) ........................................................................................................................ 20

*Crowell v. Benson,*
  285 U.S. 22 (1932) .................................................................................................................... 20, 21

*Currin v. Wallace,*
  306 U.S. 1 (1939) ............................................................................................................................ 28

*Curtis v. Loether,*
  415 U.S. 189 (1974) ........................................................................................................................ 15

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469 (1962) ........................................................................................................................ 14

*David v. Alphin,*
  704 F.3d 327 (4th Cir. 2013) ............................................................................................................ 5

*Deltek, Inc. v. DOL Admin Rev. Bd.,*
  649 F. App'x 320 (4th Cir. 2016) ......................................................................................... 13, 14, 16

*Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC,*
  949 F.3d 891 (4th Cir. 2020) ............................................................................................................ 9

iii

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ..................................................................................................... 8, 23

*Gabelli v. Sec. & Exch. Comm'n,*
568 U.S. 442 (2013) ........................................................................................................ 9

*Granfinanciera, S.A. v. Nordberg,*
492 U.S. 33 (1989) .................................................................................................*passim*

*Guile v. Durham Nephrology Associates,*
2016 WL 375077 (M.D.N.C. Jan. 29, 2016) ................................................................ 27

*Haaland v. Brackeen,*
599 U.S. 255 (2023) ...................................................................................................... 25

*Hardin v. Belmont Textile Mach. Co.,*
355 F. App'x 717 (4th Cir. 2009) ................................................................................. 15

*Impro Prods., Inc. v. Block,*
722 F.2d 845 ................................................................................................................... 9

*Iota Xi Chapter of Sigma Chi Fraternity v. Patterson,*
566 F.3d 138 (4th Cir. 2009) ........................................................................................ 29

*Isrealitt v. Enter. Servs. LLC,*
78 F.4th 647 (4th Cir. 2023) ........................................................................................ 15

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) ........................................................................................ 26

*K&R Contractors, LLC v. Keene,*
86 F.4th 135 (4th Cir. 2023) ............................................................................. 21, 22, 23

*Kaufmann v. Kijakazi,*
32 F.4th 843 (9th Cir. 2022) ........................................................................................ 22

*King v. Richardson,*
136 F.2d 849 (4th Cir. 1943) ....................................................................................... 10

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) ........................................................................................................ 8

*Leachco, Inc. v. CPSC,*
103 F.4th 748 (10th Cir. 2024) ............................................................................... 22, 23

*Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB,*
2023 WL 7294839 (D.C. Cir. May 25, 2023) ................................................................ 8

iv

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................................25

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ........................................................................................................21

*Marcus v. Barilla Am. NY, Inc.,*
    14 F. Supp. 3d 108 (W.D.N.Y. 2014)..............................................................................27

*Meta Platforms, Inc. v. FTC,*
    2024 WL 1121424 n.7 (D.D.C. Mar. 15, 2024) ...............................................................20

*Millsap v. McDonnell Douglas Corp.,*
    368 F.3d 1246 (10th Cir. 2004) ................................................................................. 13, 14

*Mistretta v. United States,*
    488 U.S. 361 (1989) ........................................................................................................26

*Moats v. Nat'l Credit Union Admin. Bd.,*
    2024 WL 1724271 (S.D. Tex. Apr. 9, 2024) .....................................................................7

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009) ........................................................................................................31

*Nat'l Cable Television Ass'n, v. United States,*
    415 U.S. 352 (1974) ........................................................................................................27

*Nixon v. Adm'r of Gen. Servs.,*
    433 U.S. 425 (1977) ........................................................................................................26

*NLRB v. Jones & Laughlin Steel Corp.,*
    301 U.S. 1 (1937) ................................................................................... 15, 16, 17, 20

*NLRB v. Starbucks Corp.,*
    125 F.4th 78 (3d Cir. 2024) ............................................................................................22

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    584 U.S. 325, (2018) ......................................................................................................16

*Oklahoma v. United States,*
    62 F.4th 221 (6th Cir. 2023), cert. denied, 144 S. Ct. 2679 (2024).................................29

*Pandazides v. Va. Bd. of Educ.,*
    13 F.3d 823 (4th Cir. 1994)............................................................................................15

*PBM Products, LLC v. Mead Johnson & Co.,*
    639 F.3d 111 (4th Cir. 2011) ..........................................................................................10

v

*Pittston Co. v. United States,*
    368 F.3d 385 (4th Cir. 2004) ........................................................................................27, 28, 29

*Plumbers & Steamfitters Union Local No. 10 v. Waters,*
    451 F. Supp. 3d 543 (E.D. Va. 2020) ..................................................................................... 10

*Porter v. Warner Holding Co.,*
    328 U.S. 395 (1946) ............................................................................................................... 12

*Rodriguez v. Soc. Sec. Admin.,*
    118 F.4th 1302 (11th Cir. 2024) ............................................................................................ 22

*Schmidt v. Levi Strauss & Co.,*
    621 F. Supp. 2d 796 (N.D. Cal. 2008) ................................................................................... 18

*SEC v. Jarkesy,*
    144 S. Ct. 2117 (2024) ..................................................................................................*passim*

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ............................................................................................................... 23

*Souch v. Califano,*
    599 F.2d 577 (4th Cir. 1979) ................................................................................................. 30

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ................................................................................................................. 11

*Stern v. Marshall,*
    564 U.S. 462 (2011) ............................................................................................................... 16

*Strickland v. United States,*
    32 F.4th 311 (4th Cir. 2022) .................................................................................................. 13

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) .......................................................................................................*passim*

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ................................................................................................................. 6

*Town of Chester v. Laroe Ests., Inc.,*
    581 U.S. 433 (2017) ............................................................................................................... 24

*Tull v. United States,*
    481 U.S. 412 (1987) .......................................................................................................*passim*

*U.S. Telecom Ass'n v. FCC,*
    359 F.3d 554 (D.C. Cir. 2004) ............................................................................................... 27

*United States v. Arthrex, Inc.,*
 594 U.S. 1 (2021) ...................................................................................................................24

*United States v. Hosford,*
 843 F.3d 161 (4th Cir. 2016) ................................................................................................29

*United States v. Wells,*
 519 U.S. 482 (1997) ...............................................................................................................19

*Wallace v. Kato,*
 549 U.S. 384 (2007) .................................................................................................................9

*West v. Gibson,*
 527 U.S. 212 (1999) ...............................................................................................................12

*Withrow v. Larkin,*
 421 U.S. 35 (1975) .................................................................................................................30

*YAPP USA Auto. Sys., Inc. v. NLRB,*
 2024 WL 4508993 (U.S. Oct. 15, 2024)..................................................................................9

*YAPP USA Auto. Sys., Inc. v. NLRB,*
 2024 WL 4489598 (6th Cir. Oct. 13, 2024) ......................................................................9, 23

*YAPP USA Auto. Sys., Inc. v. NLRB,*
 ---F. Supp. 3d---, 2024 WL 4119058 (E.D. Mich. Sept. 9, 2024) ......................................8, 23

*Yellow Freight Sys., Inc. v. Martin,*
 983 F.2d 1195 (2d Cir. 1993) ................................................................................................18

**STATUTES**

5 U.S.C. § 1202(d) ............................................................................................................... 10, 24

5 U.S.C. § 556.............................................................................................................................3

5 U.S.C. § 7521(a) ......................................................................................................................9

18 U.S.C. §1514A(b)(1)(B) ......................................................................................................28

21 U.S.C § 399d(b)(2)(A)..........................................................................................................29

21 U.S.C §§ 341-350m ..............................................................................................................18

21 U.S.C. § 301...........................................................................................................................2

21 U.S.C. § 393(b)(2)(A)...........................................................................................................17

21 U.S.C. § 399d...............................................................................................................*passim*

28 U.S.C. § 1391(e)(1) ..................................................................................................................28

28 U.S.C. § 2401(a) ..................................................................................................................9, 10

28 U.S.C. § 2675(a) ....................................................................................................................28

42 U.S.C. § 2000e-5(f)(1) ............................................................................................................28

42 U.S.C. § 5851(b)(4) ................................................................................................................28

49 U.S.C. § 20109(d)(3) ..............................................................................................................28

**RULES**

Fed. R. Civ. P. 12(b) ......................................................................................................................5

Fed. R. Civ. P. 56(a) ......................................................................................................................6

**LEGISLATIVE MATERIALS**

156 Cong. Rec. H8861-01, H8888-89, (Dec. 21, 2010) ..............................................................18

**REGULATIONS**

20 C.F.R. § 404.926 .....................................................................................................................30

29 C.F.R. § 1987.105(a) .................................................................................................................3

29 C.F.R. § 1987.106(a) .................................................................................................................3

29 C.F.R. § 1987.107(a) .................................................................................................................3

29 C.F.R. § 1987.110(e) .................................................................................................................3

29 C.F.R. § 1987.114(a) ...............................................................................................................25

29 C.F.R. § 18.12(b) .....................................................................................................................10

29 C.F.R. § 1987.110(a) .................................................................................................................3

29 C.F.R. § 1987.103(b) .................................................................................................................3

29 C.F.R. Part 18 ............................................................................................................................3

29 C.F.R. Part 1987 ........................................................................................................................3

*Secretary's Order 01-2020-Delegation of Authority and Assignment of Responsibility to the
Administrative Review Board,*
85 Fed. Reg. 13,187 (Mar. 6, 2020) ........................................................................................2, 3

viii

**OTHER AUTHORITIES**

Antonin Scalia and Bryan A. Garner,
*Reading Law: The Interpretation of Legal Texts,* 63-65 (2012)...........................................................7

Donald G. Kempf and Roger L. Taylor*,*
*Wrongful Discharge: Historical Evolution, Current Developments, and a*
*Proposed Legislative Solution*, 28 San Diego L. Rev. 117 (1991).......................................................15

Joan M. Krauskopf,
*Employment Discharge: Survey and Critique of the Modern At Will Rule*,
51 UMKC L. Rev. 189 (1983).............................................................................................................15

*U.S. Food and Drug Administration,*
2019 Report to Congress on the National Agriculture and Food Defense Strategy (2019)
https://www.fda.gov/media/150367/download?attachment ..................................................................15

ix

**INTRODUCTION**

In February of 2015, Craig Watts—a Robeson County poultry farmer who raised chickens for Perdue Farms—filed a whistleblower complaint with the United States Department of Labor ("DOL"), claiming that Perdue retaliated against him after he publicly alleged that the company sent him sick and dying birds that it refused to help treat, in violation of the Food Safety Modernization Act ("FSMA"), 21 U.S.C. § 399d. Pursuant to Congress's statutory scheme for the protection of whistleblowers alleging violations of federal food safety laws, Watts' complaint led to proceedings before a DOL Administrative Law Judge ("ALJ"), in which Perdue has participated since 2016. Now, however, after participating in those proceedings for nearly a decade, Perdue attempts to short-circuit the administrative process just before its completion by bringing this lawsuit against DOL, its Secretary, DOL's Office of ALJs, the ALJ overseeing the case (the "Government Defendants"), and Watts, instead of having its claims heard by a court of appeals upon conclusion of the administrative process as Congress intended. Whatever the merits of Watts' underlying whistleblower claims, Perdue's complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim.

At the threshold, and as this Court correctly observed when denying Perdue's motion for preliminary injunction, district courts lack subject matter jurisdiction under the FSMA, which expressly channels judicial review to an appropriate U.S. Court of Appeals in the first instance. *See* Order at 3-5, ECF No. 43. As to subject matter jurisdiction, Perdue's motion for summary judgment ("Pl.'s MSJ"), ECF No. 49, merely repeats arguments from its motion for preliminary injunction, and provides no reason for the Court to revisit its correct observation that the FSMA explicitly divests the Court of jurisdiction to hear Perdue's claims. For that reason alone, dismissal is warranted. But even if the FSMA did not bar district court jurisdiction, Perdue's claims would be untimely and barred by laches because it waited over eight years to challenge the constitutionality of the administrative proceedings at issue.

In all events, Perdue's Seventh Amendment and Article III arguments (Counts 1 and 2) also fail on the merits as a matter of law because Watts' whistleblower claim involves public (and not private) rights

1

and is equitable in nature, so neither the Seventh Amendment nor Article III apply. Perdue's removal claim (Count 3) is similarly meritless, because it fails to establish harm as required by controlling precedent. And regardless, the proper remedy for such a removal claim—if successful—is not an injunction, but declaratory relief and severance of the offending provision. Finally, Perdue's nondelegation (Count 4) and due process claims (Count 5) fare no better; they are premature, confused on the law, and without merit. The Court should therefore deny Perdue's motion and dismiss its complaint in its entirety. In the alternative, this Court should grant summary judgment to the Government Defendants on all counts because no genuine dispute exists as to the material facts and the Government Defendants are entitled to judgment as a matter of law.

## BACKGROUND

### I.      Statutory and Regulatory Framework

Since 1938, the Federal Food, Drug, and Cosmetic Act ("FDCA") has authorized the United States Food and Drug Administration ("FDA") to regulate the safety of food in interstate commerce. *See* 21 U.S.C. § 301, *et seq.* On January 4, 2011, Congress enacted the FSMA, which substantially amended the FDCA by requiring federal regulators to establish comprehensive prevention-based controls across the food supply. *See* Pub. L. No. 111-353, 124 Stat. 3885; 2019 Report to Congress on the National Agriculture and Food Defense Strategy at 3 (available at https://www.fda.gov/media/150367/download?attachment). As part of these public safety controls, Congress created a whistleblower protection provision administered by the Secretary of Labor. 21 U.S.C. § 399d. This provision works in conjunction with federal food safety laws by prohibiting covered entities from discharging or otherwise retaliating against an employee for reporting or assisting in the investigation of information relating to violations or perceived violations of "any order, rule, regulation, standard, or ban under [the FDCA]." *Id*. § 399d(a)(1).

An employee who believes he or she has been subjected to retaliation for whistleblowing covered by the FSMA may file a complaint with the Secretary of Labor. *Id.* § 399d(b)(1). The Secretary has delegated responsibility for receiving and investigating such complaints to the Assistant Secretary for Occupational Safety and Health ("OSHA"). *See* Sec'y of Lab. Order 08-2020, 85 Fed. Reg. 58,393 (Sept.

2

18, 2020); 29 C.F.R. §§ 1987.103(b), 1987.104(a). Following an investigation, OSHA issues a determination either dismissing the complaint or finding retaliation and ordering appropriate relief. 29 C.F.R. § 1987.105(a).

Either the complainant or the employer may file objections to OSHA's determination within 30 days and request a *de novo* hearing before a DOL ALJ. *Id*. § 399d(b)(2)(B); 29 C.F.R. § 1987.106(a). Except as provided in 29 C.F.R. Part 1987, proceedings before the ALJ under the FSMA are governed by the procedures in 29 C.F.R. Part 18, subpart A. 29 C.F.R. § 1987.107(a). Either party may seek review within 14 days of an ALJ's decision before DOL's Administrative Review Board ("ARB"). 29 C.F.R. § 1987.110(a). The ARB's decision is, in turn, subject to the discretionary review of the Secretary of Labor. 29 C.F.R. § 1987.110(e); Sec'y of Lab. Order 01-2020, 85 Fed. Reg. 13,187 (Mar. 6, 2020). If DOL finds that a violation has occurred, it may require the employer to take affirmative steps to abate the violation, reinstate the employee, or provide backpay, compensatory damages, and reasonable litigation costs and expenses as appropriate. 21 U.S.C. § 399d(b)(3)(B)-(C). If either party is unsatisfied with the agency's final decision, it may seek judicial review in an appropriate U.S. Court of Appeals. 21 U.S.C. § 399d(b)(5).[1]

The adjudicatory scheme vests the ALJs with limited authority "to conduct fair and impartial proceedings, including those described in the Administrative Procedure Act [("APA")], 5 U.S.C. § 556." 29 C.F.R. § 18.12(b). This includes the power to manage discovery and to decide the matter without a hearing on a motion as appropriate. *Id*. At a FSMA hearing, "[f]ormal rules of evidence will not apply, but rules or principles designed to assure production of the most probative evidence will be applied. The ALJ may exclude evidence that is immaterial, irrelevant, or unduly repetitious." *Id*. § 1987.107(d).

## II.   Craig Watts' Whistleblower Claim

---

[1] Should the Secretary "not issue[] a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination," a complainant may bring an action in an appropriate federal district court, 21 U.S.C. § 399d(b)(4), and either party may request a jury trial there. *Id*. A prevailing whistleblower may be granted "all relief necessary to make the employee whole." *Id*. § 399d(b)(4)(B).

In February 2015, Watts filed his original FSMA complaint with OSHA, claiming that Perdue retaliated against him after he alleged that the company sent him sick and dying birds that it refused to help treat. *See* Compl., ECF No. 6, Ex. 1. On February 8, 2016, OSHA issued its findings, concluding that Perdue was an entity covered by FSMA, but that Watts was not an "employee" under the law. Compl. Ex. 2. Watts then requested a hearing before an ALJ, and the parties continued to engage in administrative litigation and discovery for the next eight years. *See* Compl. Exs. 3-14.

Perdue first raised arguments under the nondelegation doctrine, Due Process Clause, Articles II and III, and the Seventh Amendment in a letter to the ALJ on July 19, 2024. *See* Compl. Ex. 15. On July 29, 2024, Perdue filed a motion to dismiss the ALJ proceeding based on these new constitutional arguments, which the ALJ denied on August 8, 2024. Compl. Exs. 18, 20. Shortly before Perdue filed its complaint in this Court, the ALJ issued an order continuing Perdue's pending deadlines in the administrative proceeding. Compl. ¶ 45. On March 4, 2025, Perdue and Watts filed a joint motion to stay the underlying administrative proceedings pending a decision on the parties' dispositive motions in this Court, which the ALJ has granted.

## III.     <u>Procedural History</u>

On August 20, 2024—nearly a decade after Watts first filed his whistleblower complaint with DOL—Perdue filed its complaint in this Court, along with a motion for preliminary injunction. ECF Nos. 1, 4, 6. By this action, Perdue seeks to permanently enjoin the ongoing DOL FSMA whistleblower proceeding, alleging that DOL's adjudication of Watts' whistleblower claim violates the Seventh Amendment (Count 1) and Article III (Count 2); that the ALJ's statutory removal protections violate Article II (Count 3); and that features of the administrative proceeding violate both the private nondelegation doctrine (Count 4) and the Due Process Clause of the Fifth Amendment (Count 5). *See* Compl. ¶¶ 59-94.

Following briefing and a hearing, the Court denied Perdue's motion for preliminary injunction on January 29, 2025, observing that "the FSMA whistleblower statute appears to explicitly divest the district courts of jurisdiction" over Perdue's claims, such that the Court's "jurisdiction over these cases is in doubt." Order at 4-5. However, "because the Court also conclude[d] that the preliminary injunction motion may

4

easily be denied," it reserved a final decision as to jurisdiction and assumed it had jurisdiction for purposes of the preliminary injunction motion, holding that Perdue had nevertheless failed to demonstrate either imminent irreparable harm, or that the balance of the equities and the public interests favored issuance of a preliminary injunction. *See* Order at 5-6. Pursuant to the parties' stipulated briefing schedule, ECF No. 33, Perdue filed its motion for summary judgment 21 days later, on February 19, 2025. ECF Nos. 48-51.

<u>**LEGAL STANDARDS**</u>

The Government Defendants' motion to dismiss under Rules 12(b)(6) and 12(b)(1) tests the legal sufficiency of claims alleged in the complaint. A motion to dismiss pursuant to Rule 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. The motion may attack the court's subject matter jurisdiction by asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or may assert that as a factual matter, the plaintiff cannot meet its burden of establishing a jurisdictional basis for this suit. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A complaint must also be dismissed for lack of subject matter jurisdiction when it contains no well-pleaded allegations that plausibly establish a plaintiff's standing. *See David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013).

A complaint is subject to dismissal under Rule 12(b)(6) if it fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Legal conclusions, "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient to state a plausible claim. *Id.*; *Twombly*, 550 U.S. at 555. Although the Court should accept all allegations in the complaint as true, legal conclusions couched as factual allegations are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Alternatively, because the material facts in this case are not disputed and the Government Defendants are entitled to judgment as a matter of law, the Court may treat the Government's motion as

one for summary judgment. Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**ARGUMENT**

**I.      This Court Lacks Jurisdiction Over Perdue's Claims**

**A.      The FSMA Expressly Limits District Court Jurisdiction**

As this Court correctly observed in its Order denying Perdue's motion for preliminary injunction, the "FSMA whistleblower statute appears to explicitly divest the district courts of jurisdiction" over collateral attacks on whistleblower proceedings like Perdue's. Order at 4. That is because in the FSMA, "Congress has explicitly provided that there shall not be judicial review in a civil or criminal proceeding of any order that could be reviewed by the appropriate court of appeals." *Id*. (citing 21 U.S.C. § 399d(b)(5)(B)). Perdue continues to resist this conclusion in its motion for summary judgment, arguing again that *Axon Enterprise, Inc. v. FTC* permits the Court to ignore the plain language of the statute and hear its claims anyway because it raises "constitutional challenges to the structure of administrative agencies." Pl.'s MSJ at 9-10 (citing *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023)). But as this Court correctly concluded: "*Axon*, as well as *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), on which it relies, address implicit divestiture of jurisdiction in the district courts, and are inapposite where there is explicit divestiture." Order at 4. Because the FSMA's divestiture is explicit, *see* 21 U.S.C. § 399d (b)(5)(B) ("[n]o judicial review"), Perdue's claims should be dismissed for lack of subject matter jurisdiction. *See Bowles v. Russell*, 55 1 U.S. 205, 212-13 (2007) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them"); *Axon*, 598 U.S. at 185 (recognizing that Congress may preclude jurisdiction "explicitly, providing in so many words that district court jurisdiction will yield.").

None of Perdue's arguments to the contrary are persuasive. Under Section 399d(b)(5)(A), Congress required that judicial review of DOL decisions in FSMA whistleblower cases like this one be channeled directly to an appropriate "United States Court of Appeals." 21 U.S.C. § 399d(b)(5)(A). And Section

6

399d(b)(5)(B), entitled "[n]o judicial review," independently provides that "[a]n order of the Secretary with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding." *Id*. § 399d(b)(5)(B). Congress's inclusion of an explicit divestiture of jurisdiction in Section 399d(b)(5)(B) differentiates the FSMA from the statute considered by the Supreme Court in *Axon*. As Perdue's own brief makes clear, *Axon* dealt with "[Section] 78y(a)(1) of the Exchange Act[,] [which] says that '[a] person aggrieved by a final order of the Commission . . . may obtain review of the order in the United States Court of Appeals . . . by filing in such court . . . a written petition requesting that the order be modified or set aside in whole or in part.'" Pl.'s MSJ at 10 (quoting *Axon*, 598 U.S. at 210 (Gorsuch, J., concurring)). Unlike that "implicit[]" divestiture of jurisdiction, which operates "by specifying a different method to resolve claims about agency action," the FSMA's divestiture is *explicit*, "providing in so many words that district court jurisdiction will yield." *Axon*, 598 U.S. at 185. *See* 21 U.S.C. § 399d(b)(5)(B) ("[n]o judicial review"). That distinction makes all the difference, as the Supreme Court in *Axon* and other courts since have made clear. *See Axon*, 598 U.S. at 185 (contrasting "explicit[]" and "implicit[]" divestiture); *Moats v. Nat'l Credit Union Admin. Bd.*, 2024 WL 1724271, at *4 (S.D. Tex. Apr. 9, 2024) ("the court finds [the statute] is an explicit bar to all of [plaintiff]'s claims, constitutional or otherwise"); *CBW Bank v. FDIC*, No. 24-2535-DDC-BGS, 2025 WL 671567, at *5 (D. Kan. Mar. 3, 2025) (similar) (citing *Bohon v. FERC*, 92 F.4th 1121, 1124 (D.C. Cir. 2024)); *Azimov v. DHS*, No. 22-56034, 2024 WL 687442, at *1 (9th Cir. Feb. 20, 2024) (cited in Order at 4).

Perdue's belated attempt to interpret the FSMA's express jurisdictional bar as limited to "final" orders only, Pl.'s MSJ at 9, would nullify Section 399d(b)(5)(B) in practice, because a defendant to FSMA whistleblower proceedings would always be able to evade Congress's express jurisdictional bar merely by challenging a decision of an ALJ before it becomes the final order. This conclusion cuts against the presumption against ineffectiveness in statutory interpretation, which requires that a textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored. *See* A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* 63-65 (2012). Perdue's interpretation also

7

strains the text of Section 399d(b)(5)(B) beyond its breaking point—Section 399d(b)(5)(B) itself does not use the word "final." *See* 21 U.S.C. § 399d(b)(5)(B). And as this Court correctly concluded at the motion for preliminary injunction stage, the order denying Perdue's motion to dismiss during the administrative proceeding is plainly one "with respect to which review could have been obtained" in the appropriate court of appeals. *Id*. *See* Order at 4 ("Perdue has raised in the Watts administrative proceedings its arguments under *Jarkesy*, which have been rejected by the ALJ, meaning they are properly preserved for review in the court of appeals"); *id*. at 5 ("Should the ALJ decide against Perdue, Perdue may seek review in the court of appeals, which is plainly positioned to remedy any alleged error.").

If any doubt remained as to this Court's lack of jurisdiction, the posture of *Jarkesy*—the case on which Perdue relies for all of its claims—provides additional clarity. *Jarkesy* itself came up on direct review to the Fifth Circuit, not collateral attack in district court, as Perdue has attempted here. In that sense, a decision denying jurisdiction here would align with the procedural pathway taken in *Jarkesy*, where the plaintiff's constitutional claims were pursued on direct appeal from an SEC administrative proceeding to the Fifth Circuit, and then to the Supreme Court. *See Blankenship v. Fin. Indus. Regulatory Auth.*, No. CV 24-3003, 2024 WL 4043442, at *2 n.3 (E.D. Pa. Sept. 4, 2024) (same). Because the FSMA expressly precludes district court jurisdiction over Perdue's claims, 21 U.S.C. § 399d(b)(5)(B), this Court should dismiss the complaint in its entirety. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (courts are presumed to lack jurisdiction; the "burden of establishing the contrary rests upon" plaintiff).[2]

---

[2] At a minimum, the FSMA "displays a fairly discernible intent," *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010), to channel review of Perdue's Seventh Amendment and due process claims through DOL, with direct review in the courts of appeals alone. 21 U.S.C. § 399d(b)(5)(A)-(B). And "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding . . . especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023). Indeed, multiple courts have dismissed analogous Seventh Amendment claims in recent months for lack of jurisdiction on this basis, even in the wake of *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024). *See, e.g., Yapp USA Auto. Sys., Inc. v.*

8

### B.     Perdue's Claims are Barred by the Statute of Limitations

Even if the FSMA did not expressly divest jurisdiction over Perdue's claims (it does), Perdue's claims would still fail because they are time-barred under the relevant six-year statute of limitations applicable to this case. *See* 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). Section 2401(a) applies to constitutional claims like those brought by Perdue. *See Impro Prods., Inc. v. Block*, 722 F.2d 845, 851 n. 12 (D.C. Cir. 1983) ("[I]f plaintiffs indeed assert a colorable constitutional claim, the District Court must determine whether it satisfies the six-year statute of limitations for civil actions against the United States. 28 U.S.C. § 2401(a)."). A "claim accrues when the plaintiff has a complete and present cause of action." *Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 898 (4th Cir. 2020) (quoting *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 448 (2013)). "This occurs 'when the plaintiff can file suit and obtain relief.'" *Id*. (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

Here, assuming *arguendo* that the FSMA did not preclude district court jurisdiction, *but see supra* 6-8, Perdue could have brought suit as early as March 2016, when the ALJ proceedings forming the basis for this action first began. Beginning in March 2016, Perdue was plainly on notice that Watts had brought an administrative complaint before an ALJ seeking monetary and injunctive relief for purposes of Perdue's Seventh Amendment, Article III, Article II removal power, private nondelegation doctrine, and due process claims. *See* ECF No. 51-1 at 13-14. All of the underlying facts which form the basis for Perdue's flawed constitutional challenges were present at that time: Watts had filed his complaint and specified the relief sought, an ALJ had been assigned to the case, and the removal protections set forth at 5 U.S.C. § 7521(a)

---

*NLRB*, ---F. Supp. 3d---, 2024 WL 4119058, at *10-12 (E.D. Mich. Sept. 9, 2024), *stay pending appeal denied*, 2024 WL 4489598 (6th Cir. Oct. 13, 2024), *writ of injunction denied*, 2024 WL 4508993 (U.S. Oct. 15, 2024); *Blankenship*, 2024 WL 4043442, at *2-3; *see also Chau v. SEC*, 72 F. Supp. 3d 417, 429 (S.D.N.Y. 2014), *aff'd*, 665 F. App'x 67 (2d Cir. 2016) (dismissing due process claim as precluded under *Thunder Basin*). Accordingly, should the Court disagree that FSMA imposes a *clear* jurisdictional bar, the Court should nonetheless dismiss for lack of jurisdiction on this ground.

and 5 U.S.C. § 1202(d) were in place, as were the procedural features of the ALJ adjudication process that Perdue now contests. *See* 29 C.F.R. § 18.12(b) (ALJ's power over discovery); *id*. § 1987.107(d) (ALJ authority to "exclude evidence that is immaterial, irrelevant, or unduly repetitious"); *id*. § 1987.115 (ALJ power to waive rules or regulation governing its proceedings upon a finding of good cause or "special circumstances not contemplated" by the regulations); *id*. § 1987.108(a)(1) (Assistant Secretary of Labor for Occupational Safety and Health's power to "participate as a party or as amicus curiae at any time at any stage of the proceeding"); 21 U.S.C. § 399d(b)(4)(A) (provision allowing Watts to bring his claim to district court "[i]f the Secretary has not issued a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination."). *See also* Pl.'s MSJ at 26-27 (challenging the foregoing provisions in the context of its due process claim). Perdue's alleged harm of "being required to endure administrative proceedings" necessarily began when those proceedings were initiated. Compl. ¶ 12. Accordingly, Perdue's claim first accrued when Watts filed his complaint with the ALJ in March 2016, meaning that Perdue had until March of 2022 at the latest to bring its claims pursuant to the six-year statute of limitations governing this action. 28 U.S.C. § 2401(a).

However, Perdue waited over *eight years* before presenting these claims to the ALJ in the form of its July 29, 2024 motion to dismiss, ECF No. 51-19, and another month before filing its instant complaint in this Court. ECF No. 1. The applicable statute of limitations does not permit such a delay. *See* 28 U.S.C. § 2401(a). All of Perdue's claims should accordingly be dismissed as time-barred.[3]

---

[3] The doctrine of laches also bars Perdue's stale claims. When a "suit is brought after the statutory time has elapsed, the burden is on the complainant to show . . . that it would be inequitable to apply [laches] to his case." *King v. Richardson*, 136 F.2d 849, 862 (4th Cir. 1943). After the filing of Watts' FSMA complaint, Perdue unreasonably waited over eight years to argue that the administrative proceedings were unconstitutional. That delay prejudiced both Watts and the agency, which spent considerable resources during that period investigating and adjudicating Perdue's compliance with the FSMA. *See Plumbers & Steamfitters Union Local No. 10 v. Waters*, 451 F. Supp. 3d 543, 551-52 (E.D. Va. 2020) (applying laches based on: (1) plaintiffs' "lack[] [of] diligence in asserting its claims," and (2) "the inference of prejudice [to the defendant] warranted by the plaintiff's delay") (citing *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011)). Laches thus provides additional grounds for dismissal.

10

**II.**  **Counts 1 and 2 Should be Dismissed Because Perdue Failed to Plausibly Allege that DOL's Adjudication of FSMA Whistleblower Claims Violates the Seventh Amendment or Article III**

Because it lacks jurisdiction, the Court need not consider the merits of Perdue's Seventh Amendment and Article III claims, which contend that DOL's administrative adjudication of Watts' FSMA complaint violates Perdue's right to a jury trial and infringes on the federal judiciary's purview under Article III. Compl. ¶¶ 59-69. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In any event, both of these claims fail on the merits as well. The two-part test articulated by the Supreme Court in *SEC v. Jarkesy* confirms that neither the Seventh Amendment nor Article III is implicated here. 144 S. Ct. 2117, 2127 (2024). "The threshold issue is whether this action implicates the Seventh Amendment." *Id*. Then, courts "consider whether the 'public rights' exception to Article III jurisdiction applies." *Id*.

**A.**  **The Seventh Amendment Does Not Apply Because the Suit is Equitable in Nature**

The Seventh Amendment right to trial by jury only "extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 2128 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). *SEC v. Jarkesy*, 144 S. Ct. 2117, provides controlling guidance regarding how courts should decide whether a suit is "legal in nature," identifying two factors for consideration: "the cause of action and the remedy it provides." *Id*. at 2129. And "[s]ince some causes of action sound in both law and equity," the Supreme Court "concluded that the remedy was the 'more important' consideration." *Id*. (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)). In *Jarkesy*, the Supreme Court determined that SEC's federal securities fraud action seeking civil penalties designed "to punish the defendant rather than to restore the victim" was analogous to common law fraud actions historically brought in the courts of law, such that the Seventh Amendment right to a jury trial was implicated. *Id*. In contrast with *Jarkesy* itself, application of the two factors to the FSMA makes clear that the Seventh Amendment is not implicated in this case.

1.  The "make whole" relief sought by Watts is equitable in nature.

Perdue notes that Watts seeks monetary relief and argues that such relief is a legal remedy. Pl.'s MSJ at 16. But as the Supreme Court recognized in *Jarkesy*, "monetary relief can be legal or equitable."

11

144 S. Ct. at 2129. And, "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" *Id*. (quoting *Tull*, 481 U.S. at 422). Restitution differs from a penalty in that the former seeks only to "restor[e] the status quo and order[] the return of that which rightfully belongs to the [plaintiff]." *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). In *Jarkesy*, the statutes at issue conditioned the availability and size of the SEC's penalties on considerations such as "culpability, deterrence, and recidivism." 144 S. Ct. at 2129. Because the statutes "tie[d] the availability of civil penalties to the perceived need to punish the defendant rather than to restore the victim," the Court held that the remedy sought was a legal penalty rather than equitable restitution, triggering the Seventh Amendment. *Id*.

The FSMA, by contrast, characterizes the remedies available to a prevailing whistleblower as "relief necessary to make the employee whole." 21 U.S.C. § 399d(b)(4)(B) (describing the same remedies, including reinstatement and back pay, as those available in proceedings before the Secretary of Labor). The statute provides that DOL may grant such make-whole relief in the form of an order to abate the violation; to reinstate the whistleblower; or to provide him or her with relief (including back pay) to "restore the terms, conditions, and privileges associated with his or her employment;" and in some circumstances, to reimburse reasonable litigation costs. *Id*. § 399d(b)(3)(B)-(D). The Supreme Court has observed that monetary remedies like back pay are purely equitable when, as in the case of Section 399d, they are statutorily made an integral part of overall relief designed to make an employee whole. *See West v. Gibson*, 527 U.S. 212, 217 (1999); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572 (1990). Indeed, none of the punitive factors found determinative in *Jarkesy* are present in Section 399d. *Compare Jarkesy*, 144 S. Ct. at 2129 (citing 15 U.S.C. §§ 78u–2(c), 80b–3(i)(3)), *with* 21 U.S.C. § 399d(b)(3)(B), (4)(B). Rather, the statutory remedies authorized by the FSMA are designed merely to "restore the status quo" for the prevailing whistleblower, so the Seventh Amendment is not implicated. *Jarkesy*, 144 S. Ct. at 2129 (citation omitted).

Despite Congress's clear intent to make the prevailing whistleblower whole, Perdue argues that the

remedies sought by Watts are nevertheless legal in nature. *See* Pl.'s MSJ at 15-17. But instead of examining the remedies under the standard established in *Jarkesy*, Perdue cites to caselaw which broadly stands for the proposition that, as a general matter, compensatory relief is considered a legal remedy. *See id.* at 16-17. Perdue's analysis is misguided, as it ignores the Supreme Court's acknowledgment that "courts of equity could order a defendant to return unjustly obtained funds." *Jarkesy*, 144 S. Ct. at 2129. As the Supreme Court has repeatedly explained, the nature of the remedy should not be judged in a vacuum; rather, the court should look to whether the remedy is designed to "punish" and "deter" or to "restore the status quo." *Id.*; *see also Tull*, 481 U.S. at 422. And when Congress makes monetary relief available under "a make-whole statute," the relief is considered equitable. *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1259 (10th Cir. 2004). The design of the provisions in the FSMA—and the express directive to "make the employee whole," 21 U.S.C. § 399d(b)(4)(B) —leave no doubt that the remedies at issue here are meant to "restore the status quo" and are thus outside the scope of the Seventh Amendment. *Tull*, 481 U.S. at 422.

The specific statutory relief sought by Watts in the ALJ proceeding here is also equitable, and "necessary to make the employee whole." 21 U.S.C. § 399d(b)(4)(B). Perdue's attempt to analogize Watts' request for equitable monetary restitution to "the equivalent of a claim for lost profits" misses the mark. Pl.'s MSJ at 17. Rather, "Watts' request for 'compensatory damages' to his business," *id.*, is tantamount to wrongfully withheld front pay, as it is "'designed to place the complainant in the identical financial position' that [he] would have occupied had [he] remained employed or been reinstated," *Deltek, Inc. v. DOL Admin Rev. Bd.*, 649 F. App'x 320, 333 (4th Cir. 2016) (approving front pay in whistleblower case as equitable relief "necessary to make the employee whole" (citation omitted)). Statutorily-authorized front pay has been held to be "an equitable remedy" time and again in this context. *Id.* at 333-34; *see also Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022) (collecting cases). Perdue fails to grapple with this holding at all, attempting instead to distinguish the relief sought by Watts from equitable front or back pay based on the phrasing of Watts' administrative complaint. *See* Pl.'s MSJ at 16-18 (quoting Watts' whistleblower complaint, Pl.'s MSJ Appendix Ex. 10, ECF No. 51-10). But it is well established that whether the Seventh

13

Amendment applies "cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962)), underscoring the weakness of Perdue's core argument.

Perdue also cites *Chauffeurs*, 494 U.S. 558, for the proposition that back pay and related benefits may sometimes be considered legal relief. Pl.'s MSJ at 18. But that case points toward the opposite conclusion. In *Chauffeurs*, the Supreme Court explained that monetary relief in the form of back pay was equitable under Title VII because "Congress specifically characterized backpay under Title VII as a form of 'equitable relief.'" 494 U.S. at 572 (citing 42 U.S.C. § 2000e–5(g)). Here, the remedy provisions of the FSMA are analogous to Title VII's remedy provision, and expressly identify back pay and other compensatory relief as equitable by stating that such remedies may be necessary to make the whistleblower "whole." *See Millsap*, 368 F.3d at 1258 (recognizing that traditionally legal remedies such as back pay can be considered equitable if Congress "specifically make[s] [the relief] part of an equitable remedy"); *Deltek*, 649 F. App'x at 333 (finding front pay equitable under analogous whistleblower statute). Watts also seeks indisputably equitable relief in the form of "expungement of the December 29, 2014 letter placing him under a Performance Improvement Plan" in addition to the monetary award, Compl. Ex. 9 at ¶ 84, whereas *Chauffeurs* turned in part on the fact that respondents there sought "only money damages," 494 U.S. at 570. Perdue's focus on the compensatory nature of the relief at issue here is thus unpersuasive. Because the FSMA provides solely for relief "necessary to make the employee whole," 21 U.S.C. § 399d(b)(4)(B), the remedy factor "is all but dispositive" of Perdue's claim, *Jarkesy*, 144 S. Ct. at 2129.

2. Watts' FSMA whistleblower claim is not analogous to a cause of action at common law.

In any event, the second (less important) *Jarkesy* factor—the "relationship between the causes of action in this case and common law," 144 S. Ct. at 2130—also weighs against Perdue, because an FSMA whistleblower retaliation claim is not closely analogous to a cause of action at common law. Perdue argues that a Section 399d whistleblower claim is analogous to a breach of employment contract or "wrongful discharge" tort claim. Pls.' MSJ at 13-15. Not so. For purposes of the Seventh Amendment, this Court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger

14

of the courts of law and equity." *Tull*, 481 U.S. at 417-18. Here, history confirms that wrongful discharge has no roots in 18th century common law; rather, it is a mid-20th century innovation. *See* Krauskopf, *Employment Discharge: Survey and Critique of the Modern At Will Rule*, 51 UMKC L. REV. 189, 232 (1983); Kempf & Taylor, *Wrongful Discharge: Historical Evolution, Current Developments, and a Proposed Legislative Solution*, 28 SAN DIEGO L. REV. 117, 121-23 (1991). As such, FSMA claims do not carry "old soil" from any common law claims for wrongful discharge. *Jarkesy*, 144 S. Ct. at 2130 (citation omitted). And even if wrongful discharge did have 18th-century roots (it does not), the Fourth Circuit has held that North Carolina common law does not recognize whistleblowing as a basis for a wrongful discharge claim at all. *See Hardin v. Belmont Textile Mach. Co.*, 355 F. App'x 717, 720 (4th Cir. 2009).

Nor is Perdue's attempt to analogize Watts' whistleblower claim to other common law torts persuasive. Pl.'s MSJ. at 14-15. Perdue cites *Curtis v. Loether*, 415 U.S. 189, 195 (1974), arguing that Watts' FSMA claim can be compared to a common law tort in light of holdings by some courts that "statutory civil-rights claims for discrimination are triable by jury under the Seventh Amendment because they are statutory torts, even though discrimination was not actionable in the 18th century." Pl.'s MSJ at 14-15. But although *Curtis* did suggest that housing discrimination claims for damages under the Fair Housing Act could be considered analogous to a "dignitary tort," it also expressly recognized that "the Seventh Amendment is generally inapplicable in administrative proceedings." 415 U.S. at 194, 195 n.10 (citing *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937)). Perdue's citation to various cases examining the unique history of the civil rights statutes, such as *Isrealitt v. Enter. Servs. LLC*, 78 F.4th 647, 658 (4th Cir. 2023) (ADA), *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828–29, 832 (4th Cir. 1994) (Rehabilitation Act), and *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709-10 (1999) (§ 1983), does not shed any additional light on the nature of whistleblower claims under the FSMA. This is particularly so where Perdue's argument that "FSMA antiretaliation claims are analogous" to an action at common law is contradicted by the Fourth Circuit's holding that statutory "front pay" of the type sought here "is an equitable remedy" under the Sarbanes-Oxley Act's nearly-identical whistleblower

15

protection provision. *Deltek*, 649 F. App'x at 333. *See also Jones & Laughlin Steel*, 301 U.S. at 48-49 (rejecting Seventh Amendment challenge to monetary award under anti-retaliation provision).

Even if the nature of such civil rights claims were relevant to this court's consideration of the FSMA, Perdue correctly acknowledges that those cases demonstrate at best only that such civil rights claims "often are viewed as sounding in both law and equity," Pl.'s MSJ at 15, making Congress' explicit recognition that the FSMA provides for equitable relief "necessary to make the employee whole" all the more dispositive. 21 U.S.C. § 399d(b)(4)(B). *See Jarkesy*, 144 S. Ct. 2129 ("[s]ince some causes of action sound in both law and equity," the "remedy [is] the 'more important' consideration.") (quoting *Tull*, 481 U.S. at 421). Because the Seventh Amendment does not apply to actions that are equitable in nature like Watts' FSMA whistleblower retaliation claim, Perdue's Seventh Amendment claim should be dismissed.

### B. DOL's Administrative Adjudication of Public Rights Under Section 399d is Consistent With Both the Seventh Amendment and Article III

Dismissal of Counts 1 and 2 is also independently warranted because Watts' FSMA complaint seeks adjudication of public rights which need not be litigated before a jury in an Article III court. Article III vests the judicial power of the United States in the federal courts and Congress cannot confer that power on entities outside of Article III. *Stern v. Marshall,* 564 U.S. 462, 484 (2011). To ascertain "whether a proceeding involves an exercise of Article III judicial power," the Supreme Court's "precedents have distinguished between 'public rights' and 'private rights.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 333-34, (2018) (citation omitted). Congress may "properly assign[] a matter to adjudication in a non-Article III tribunal" when it involves public rights and, in such cases, "the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Id.* at 345 (quoting *Granfinanciera*, 492 U.S. at 53-54).

No jury in an Article III court is required here because FSMA whistleblower claims involve public rights. Contrary to Perdue's assertion, *Jarkesy* did not "shut[] the door" on the public rights exception, Pl.'s MSJ at 19, but reaffirmed its continued vitality, *see* 144 S. Ct. at 2133 (citing "familiar" public rights). For

16

example, the Supreme Court explained that a civil penalty action brought under OSHA in *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977), fell within the public-rights exception because OSHA's "purpose . . . was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Jarkesy*, 144 S. Ct. at 2137. Rather, OSHA was "self-consciously novel" in "both concept and execution." *Id*.[4] *See also Jones & Laughlin Steel*, 301 US at 48-49. And in *Granfinanciera*, the Supreme Court instructed that the "crucial question, in cases not involving the Federal Government, is whether 'Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution.'" 492 U.S. at 54 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 593-94 (1985)). In either scenario, the public-rights exception applies.

The whistleblower protection provision of the FSMA (21 U.S.C. § 399d) shares both of these public-rights characteristics: it is both self-consciously novel and closely integrated into a public regulatory scheme. The FDCA was intended, *inter alia*, to protect public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled. 21 U.S.C. § 393(b)(2)(A). Congress passed the FSMA to strengthen the FDCA and included a variety of statutory provisions focused on preventing food-borne illness. Because then-existing law did not protect whistleblowers like Watts, Congress passed the "self-consciously novel" whistleblower provisions of Section 399d to protect employees who report violations of food safety laws, *Jarkesy*, 144 S. Ct. at 2137, in order to encourage compliance and reporting of non-compliance, and to deter violations of Congress's food safety scheme. *See, e.g.*, 21 U.S.C §§ 341-350m, 399d(a)(1).[5] "The purpose of this regime was not to enable the Federal Government to bring or adjudicate

---

[4] The Court in *Jarkesy* declined to overrule *Atlas Roofing*, 144 S. Ct. at 2136-39, which "remain[s] binding precedent" on this Court. *See Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (*per curiam*) (citation omitted).

[5] Congressional debate during passage of the FSMA confirms that the whistleblower protection at issue is

17

claims that traced their ancestry to the common law." *Jarkesy*, 144 S. Ct. at 2137. Rather, Section 399d establishes novel protections which are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Thomas*, 473 U.S. at 594. Indeed, Congress identified the prior absence of whistleblower protection as a significant deficiency in the law which increased the potential for future "outbreaks" of foodborne illness, and thus found it "most vital [to] afford those people who may know information about certain food the opportunity to inform authorities about any concerns they may have" via Section 399d. 156 Cong. Rec. H8861-01, H8889 (Statement of Rep. Lee).

Courts have long held that DOL's adjudication of claims under similar whistleblower protection statutes thus involve "public rights" that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Yellow Freight Sys., Inc. v. Martin*, 983 F.2d 1195, 1200-01 (2d Cir. 1993) (rejecting Article III and Seventh Amendment challenges to DOL adjudication of similar whistleblower claim under the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105); *see also Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 806-07 (N.D. Cal. 2008) (same as to whistleblower claims under Sarbanes-Oxley Act, 18 U.S.C. § 1514A). *Jarkesy* did not silently overturn these authorities any more than it overturned the public rights framework of *Granfinanciera*, 492 U.S. at 53 and *Thomas*, 473 U.S. at 593-94. This is particularly so because the Supreme Court itself expressly limited its review in *Jarkesy* to the question of whether the SEC can, consistent with Article III, seek civil penalties in an

---

both integral to the food safety scheme, and self-consciously novel in concept and execution:

> In the United States in 2010 . . . outbreaks like the one mentioned should not take place. With improved and modernized safety inspections, such outbreaks can be avoided and prevented. . . . Another important component of this legislation would ensure protection of whistleblowers that bring attention to important safety information pertaining to the food regulation and food safety. It is most vital that we afford those people who may know information about certain food the opportunity to inform authorities about any concerns they may have with their consumption.

156 Cong. Rec. H8861-01, H8889 (Statement of Rep. Lee); *see also id*. at H8888 (Statement of Rep. Dingell) ("[The FSMA] gives FDA new enforcement tools, mandatory recall authority, authority to detain tainted products, and protections for employees who serve as whistleblowers").

18

administrative adjudication. *See Jarkesy*, 144 S. Ct. at 2139-40 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the [SEC]'s use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial."). In that regard, the Supreme Court in *Jarkesy* did not consider whether Article III would be implicated if the SEC sought make-whole relief or imposed non-punitive remedies, let alone what other agencies can do under different statutes with different histories. Whistleblower retaliation claims like those of the FSMA therefore remain public-rights actions today.

Perdue's main argument to the contrary rests on the fact that Congress provided a limited *statutory* right to jury trial in the FSMA, triggered only under certain circumstances not present here. *See* 21 U.S.C. § 399d(b)(4)(A) (cited at Pl.'s MSJ at 19). But contrary to Perdue's assertion, Pl.'s MSJ at 19, Congress's inclusion of this provision in fact proves that the Seventh Amendment and Article III do *not* apply to FSMA whistleblower claims. After all, if a constitutional jury trial right already existed for FSMA whistleblower claims like Watts's, Congress would have had no need to create a separate statutory right available only in certain circumstances. In other words, if Congress had indeed viewed FSMA whistleblower claims as matters of private rights as Perdue argues, there would have been no need for it to create a statutory jury right. *See United States v. Wells*, 519 U.S. 482, 495 (1997) ("we presume that Congress expects its statutes to be read in conformity with this Court's precedents."). Congress' choice to authorize a limited jury trial via statute thus confirms it "knew how to allow for district court jurisdiction, yet it chose not to do so" here. *Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 630 (4th Cir. 2018). *See also Granfinanciera*, 492 U.S. at 42 n.4 (recognizing that the question of whether there is a right to a jury trial when a case is already in federal court is "quite distinct" from the inquiry into whether a claim involves public rights).

Nor does DOL's administrative proceeding involve private rights merely because it implicates Perdue's "private right to property." Pl.'s MSJ at 20 (quoting *Axon*, 598 U.S. at 204 (Thomas, J., concurring)). To the contrary, "[m]any matters that involve the application of legal standards to facts and affect private interests are routinely decided by agency action with limited or no review by Article III courts." *Thomas*, 473 U.S. at 583. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853

19

(1986) (allowing agency to adjudicate debit balance claims between commodity brokers and customers, which involved "private rights" "assumed to be at the 'core' of matters normally reserved to Article III courts"); *Crowell v. Benson*, 285 U.S. 22, 51-53 (1932). Thus, as one court recently explained in rejecting the same private property argument Perdue makes here, "[t]he dividing line between private rights and public rights is not whether an adjudication might have some impact on a person's property; indeed, most administrative adjudications have such an effect." *Meta Platforms, Inc. v. FTC*, 2024 WL 1121424, at *19 n.7 (D.D.C. Mar. 15, 2024), *appeal filed*, No. 24-5054 (D.C. Cir. Mar. 15, 2024). Perdue's assertion that "[i]f SEC-brought securities-fraud claims do not implicate public rights, then surely Watts' claims seeking personal compensation for emotional distress are not 'public rights,' either," is likewise incorrect. Pl.'s MSJ at 20. As the Supreme Court explained in *Granfinanciera*, "we rejected the view that 'a matter of public rights must at a minimum arise between the government and others.'" 492 U.S. at 54 (citation omitted).

For similar reasons, Perdue's argument that DOL's FSMA whistleblower adjudication process independently violates Article III fails as a matter of law. Pl.'s MSJ at 20-21. Perdue relies heavily on the Supreme Court's decision in *Jarkesy* for this claim, *see id.* at 21, but *Jarkesy* was a Seventh Amendment case; the Court did not consider how Article III applies to agency adjudications. *See Jarkesy*, 144 S. Ct. at 2139-40 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the [SEC]'s use of inhouse hearings to seek civil penalties violates the Seventh Amendment"). Further, and more substantively, *Jarkesy* dealt with a securities fraud action brought by the federal government in its sovereign capacity—but "[t]he public-rights analysis in [] private-dispute cases looks different." *Id.* at 2169 (Sotomayor, J, dissenting) (citing *Granfinanciera*, 492 U.S. at 54). Because this FSMA action was brought against Perdue by a private party (Watts) seeking to recover for violations of "statutory rights that are integral parts of a public regulatory scheme," the *Thomas* and *Granfinanciera* public rights framework applies and *Jarkesy* lends no support to Perdue's Article III claim. *Granfinanciera* 492 U.S. at 54-55, n.10; *Thomas*, 473 U.S. at 593-94. And even if *Jarkesy*'s discussion of the public-rights exception to the Seventh Amendment implicated Article III questions that the Supreme Court did not address, Perdue's Article III claim would still fail for

20

the reasons set forth above. *Supra* 16-20.

Even if this Court were to reach the merits and disagree with the Government Defendants' arguments, the sweeping injunction Perdue seeks would still be inappropriate. Any relief should be limited to enjoining DOL from imposing legal remedies administratively, allowing the administrative proceeding to continue as to all other remedies. *Jarkesy* did not upend the long history of administrative adjudication outside the narrow context at issue in that case. *See Crowell*, 285 U.S. at 50-51; *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) ("injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

### III.     Count 3 Should be Dismissed Because Perdue Failed to State a Plausible Removal Claim

Perdue's ALJ removal claim fails at the outset because it does not establish harm resulting from the removal restrictions it challenges, as required by *Collins v. Yellen*, 594 U.S. 220, 259 (2021). Accordingly, this Court should deny Perdue's motion without reaching the merits of its removal claim, because Perdue is not entitled to relief on the merits "regardless of whether the removal protections for DOL ALJs are constitutional." *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023). Even if Perdue had made a showing of harm sufficient to reach the merits, Perdue would not be entitled to an injunction regardless of success because the remedy for an unconstitutional removal provision is severance.

Under *Collins*, a plaintiff challenging a removal protection is entitled to relief only when the challenged protection "inflict[ed] compensable harm" on them. 594 U.S. at 259. The Fourth Circuit recently confirmed that "a party who has successfully challenged an unconstitutional removal restriction is not entitled to have the underlying agency action set aside absent reason to believe that the unconstitutional removal provision itself inflicted harm." *Keene*, 86 F.4th at 149. Thus, courts must "den[y] relief on removal claims when the challengers have not shown that the constitutional violation caused them harm." *Id.*[6]

---

[6] Seven other courts of appeals have similarly rejected claims like Perdue's for lack of harm. *See Calcutt v. FDIC*, 37 F.4th 293, 317 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023); *Leachco, Inc. v.*

In *Collins*, the Supreme Court identified two "clear-cut" examples of actionable harm attributable to a removal restriction: (1) where "the President had attempted to remove [the officer] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal," and (2) where "the President had made a public statement expressing displeasure with actions taken by [the officer] and had asserted that he would remove [the officer] if the statute did not stand in the way." *Collins*, 594 U.S. at 259-60. The Fourth Circuit has applied these examples strictly, rejecting a similar challenge to the removal protections of DOL ALJs where plaintiff failed to identify "any possible harm resulting from the allegedly unconstitutional limitations on the President's ability to remove DOL ALJs" and "nothing in the record suggests the Secretary of Labor attempted or desired to remove [the] ALJ[s]." *Keene*, 86 F.4th at 149.

Perdue has adduced no evidence that the President or the Secretary has attempted to remove ALJ Kultgen but was prevented from doing so for lack of "cause for removal," or that the President or the Secretary has expressed displeasure with actions taken by ALJ Kultgen and had asserted that he or she would remove her "if the statute did not stand in the way." *Collins*, 594 U.S. at 259-60. Instead, Perdue simply claims that the ALJ took action while subject to an unconstitutional removal protection. *See* Pl.'s MSJ at 23 (alleging injury on the basis of the ALJ's rejection of its arguments for dismissal). But Perdue's assertion that any action taken by an ALJ subject to a removal restriction automatically amounts to a "here-and-now" injury does not suffice. *Id*. Rather, "the constitutional violation must have *caused* the harm." *Calcutt*, 37 F.4th at 316. The only concrete "harms" identified by Perdue—the ALJ's rulings on Perdue's motions, Pl.'s MSJ at 23—were not themselves "caused" by the removal protections Perdue challenges. *Keene*, 86 F.4th 149. *See YAPP*, 2024 WL 4119058, *9 (rejecting reliance on a "'here and now' injury" under *Axon* for purposes of establishing harm under *Collins*); *Leachco*, 103 F.4th at 758-59 (same). Nor is

---

*CPSC*, 103 F.4th 748, 756 (10th Cir. 2024); *CFPB v. Law Offs. of Crystal Moroney, P.C.,* 63 F.4th 174, 179–80 (2d Cir. 2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *rev'd on other grounds*, 601 U.S. 416 (2024); *NLRB v. Starbucks Corp.*, 125 F.4th 78, 88 (3d Cir. 2024); *Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315 (11th Cir. 2024).

it sufficient for Perdue to allege a mere *possibility* that the ALJ may have acted differently if her removal protections were eliminated. *See Keene*, 86 F.4th at 149. "[A] more concrete showing [is] needed;" otherwise, "a petitioner could always assert a possibility that an agency with different personnel might have acted differently." *Calcutt,* 37 F.4th at 317.

Perdue attempts to distinguish *Keene* on the grounds that it seeks prospective relief in the form of an injunction halting ongoing ALJ proceedings, while plaintiffs in *Keene* sought retrospective relief in the form of vacatur of the ALJ's decision. Pl.'s MSJ at 22-23. But it is well established that the harm requirement demanded by *Collins* "remains the same whether the petitioner seeks retrospective or prospective relief," *Calcutt*, 37 F.4th at 316, as multiple circuits have recently made clear. *See, e.g., id.*; *YAPP USA Automotive Sys., Inc. v. NLRB*, 2024 WL 4489598, at *3 (6th Cir. Oct. 13, 2024) ("The question of whether the removal protection scheme inflicted harm 'remains the same whether the petitioner seeks retrospective or prospective relief.'"); *Leachco*, 103 F.4th at 757 ("*Collins*' relief analysis applies to both retrospective and prospective relief."), *cert. denied,* 2025 WL 76435 (U.S. Jan. 13, 2025); *Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 51 F.4th at 631 ("*Collins* did not rest on a distinction between prospective and retrospective relief"). *Keene* thus applies and forecloses Perdue's ALJ removal claim.

This Court should not reach the merits of Perdue's ALJ removal claim given its lack of jurisdiction and Perdue's failure to establish harm resulting from the ALJ's removal protection. *See Keene*, 86 F.4th at 148. But if the Court were to reach the merits and Perdue were to succeed, the only proper remedy would be severance of the offending provision—not an injunction barring the ALJ adjudication from taking place at all. The Supreme Court has taken this approach every time it has found a structural constitutional defect in the appointment or removal provisions of a statute in the past fifteen years. *See Free Enter. Fund*, 561 U.S. at 508 (severing removal protections instead of precluding exercise of authority); *Seila Law LLC v. CFPB*, 591 U.S. 197, 237 (2020) (severing removal protections, using "a scalpel rather than a bulldozer in curing the constitutional defect"); *Collins*, 594 U.S. at 256; *United States v. Arthrex, Inc.*, 594 U.S. 1, 23-25 (2021). Accordingly, even if the Court disagrees with Defendants' arguments, it should do no more than

23

issue declaratory relief severing the removal protections of the Merit Systems Protection Board, 5 U.S.C. § 1202(d), while allowing the ongoing ALJ proceeding to continue absent the offending removal provision.

## IV.     Perdue Failed to Plausibly Allege a Nondelegation Claim

Next, Perdue alleges that Congress, through the FSMA, has impermissibly delegated to "a private party (Watts), the power to choose . . . whether to keep an action before the DOL or to move it to an Article III court." Compl. ¶ 81, Pl.'s MSJ at 24. This argument refers to Section 399d(b)(4)(A), which provides that if DOL "has not issued a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination," a whistleblower may bring an action in an appropriate federal district court, where a jury trial may be requested by either party. 21 U.S.C. § 399d(b)(4)(A). On that basis, Perdue argues that "Congress's delegation . . . violates Article I of the Constitution, the separation of powers required by the Constitution, and the nondelegation doctrine." Compl. ¶ 82. But Watts has not exercised any governmental power, and Perdue has thus failed to demonstrate a nondelegation injury sufficient to confer standing. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought"). Even if Perdue had demonstrated an injury, its nondelegation claim is confused on the law and fails on the merits.

### A.     Perdue Lacks Standing for its Nondelegation Claim

Perdue has not suffered an actual or imminent injury redressable by this Court sufficient to confer standing for its nondelegation claim. Perdue alleges that the FSMA unconstitutionally delegates authority to Watts to decide to pursue his whistleblower claim in federal district court, but Watts has not exercised that power, and Perdue fails to explain how it has been harmed by its mere existence. Indeed, Perdue's alleged harm of being subjected to a "violation of the separation of powers and the nondelegation doctrine," Compl. ¶ 84, is no more than a generalized "interest in proper application of the Constitution and laws," and "does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992). A plaintiff may not establish injury merely by asserting a constitutional violation; instead, Perdue must identify a concrete and particularized injury in fact caused by that constitutional violation. *See*

24

*Haaland v. Brackeen*, 599 U.S. 255, 296 (2023) ("Because Texas is not injured by the placement preferences," it "does not have standing to bring . . . its nondelegation claims"). Regardless, Watts has not exercised any governmental authority whatsoever in this case—much less in a manner that causes harm to Perdue. His claim remains before the ALJ to this day. *See* Compl. ¶ 46.

Nor can Perdue establish a future injury that is sufficiently imminent to confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("an injury must be concrete, particularized, and actual or imminent"). Perdue implies that it may someday suffer an injury because Watts might eventually elect to proceed *de novo* before a district court "'within 90 days after receiving a written determination' by the Secretary." Pl.'s MSJ at 24 (quoting 21 U.S.C. § 399d(b)(4)(A)). However, this argument continues to misread the statute, which provides merely that a complainant may bring an action in district court "after receiving a written determination" or "[i]f the Secretary has not issued a final decision within 210 days after the filing of the complaint"—but *not* after a decision, since judicial review is then channeled exclusively to the courts of appeals. 21 U.S.C. § 399d(b)(4)(A); *supra* 6-8. Indeed, DOL's regulations make clear that district court review is available only if "there has been *no* final decision of the Secretary," contrary to Perdue's claim. 29 C.F.R. § 1987.114(a) (emphasis added). Perdue thus faces no prospect of future injury due to post-decisional *de novo* review. *See Clapper*, 568 U.S. at 414 (rejecting standing based on "speculative chain of possibilities"). In any event, Perdue fails to explain how it would be injured by Watts' hypothetical decision to proceed in district court, where a jury trial would be available to Perdue upon request. *See* 21 U.S.C. § 399d(b)(4)(A). Indeed, that outcome is tantamount to the relief Perdue itself seeks through its Seventh Amendment claim.

### B. Perdue's Nondelegation Claim Fails on the Merits

#### 1. Separation of powers principles are not implicated here.

Even if Perdue had established standing and jurisdiction, its nondelegation claim would still fail to state a claim on the merits. Perdue's overarching contention—that the FSMA "violates separation of powers" by allowing a complainant like Watts to remove his claims to federal district court in certain

25

circumstances (Pl.'s MSJ at 25)—misconstrues the separation of powers doctrine entirely. The separation of powers principle operates as "a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Mistretta v. United States*, 488 U.S. 361, 382 (1989) (quoting *Buckley v. Valeo*, 424 U.S. 1, 122 (1976)). The question in a separation-of-powers claim, therefore, is whether a law or action "accrete[s] to a single Branch powers more appropriately diffused among separate Branches or that undermine the authority and independence of one or another coordinate Branch." *Id*.

Here, however, Perdue does not allege any incursion by one branch of Government into the constitutional authority of another, but rather, execution of the "power to decide whether to keep his claim in an Article I agency—or whether to kickout to an Article III court" by Watts, who is by Perdue's own admission "*a private litigant*," Pl.'s MSJ. at 24, and "not even an administrative agency", Compl. ¶ 80. Perdue's citation to the Fifth Circuit's divided opinion in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) (cited at Pl.'s MSJ at 24-25) is therefore inapposite. In that case, the Fifth Circuit considered the separation of powers issues posed by Congressional delegation to a federal agency, *id*. at 459, not a private party. To the extent Perdue challenges an alleged execution of Executive functions by a *private* party, such a claim is not cognizable under the separation of powers, which focuses on "disrupt[ions] [of] the proper balance between the coordinate branches [of Government]." *Nixon v. Adm'r of Gen. Servs*.,433 U.S. 425, 443 (1977).

2.      The FSMA does not offend the private nondelegation doctrine.

Perdue's argument that the FSMA implicates the private nondelegation doctrine is also unavailing. *See* Pl.'s MSJ at 25. That doctrine does not apply here because the FSMA does not impermissibly delegate governmental authority to a private entity, and no court has ever held that it does. *Jarkesy*, 34 F.4th at 459, 462-63, did not consider the implications of the private nondelegation doctrine at all—rather, it applied the *public* nondelegation doctrine to a different statute, and issued a ruling on public nondelegation grounds that the Supreme Court declined to affirm. *See Jarkesy*, 144 S. Ct. at 2139-40 (Gorsuch, J., concurring). Thus, even if the Fifth Circuit's public nondelegation holding was persuasive on this issue (it is not), it would have no bearing on Perdue's private nondelegation claim.

26

The private nondelegation doctrine is "the lesser-known cousin of the doctrine that Congress cannot delegate its legislative function to an agency of the Executive Branch." *Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 721 F.3d 666, 670 (D.C. Cir. 2013), *vacated and remanded on other grounds,* 575 U.S. 43 (2015). It holds that "[f]ederal lawmakers cannot delegate regulatory authority to a private entity," *id.* at 670 (quoting *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936)). But "[n]ot every Congressional delegation of authority to a private party is impermissible." *Pittston Co. v. United States*, 368 F.3d 385, 394 (4th Cir. 2004). Indeed, "Congress may employ private entities for ministerial or advisory roles," *id.* at 395, or to gather facts for an agency, among other functions. *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004). The question, then, is whether the private entity exercises genuine governmental power such that its "involvement . . . in the administrative process" has "trespasse[d] into an unconstitutional delegation." *Ass'n of Am. R.R.*, 721 F.3d at 671. The Supreme Court has invoked the doctrine to invalidate a federal law only twice, and not in more than 90 years. *See Nat'l Cable Television Ass'n, v. United States,* 415 U.S. 352, 353 (1974) (Marshall, J., concurring and dissenting) (calling the doctrine "moribund").

Congress's decision to allow Watts to press his FSMA whistleblower claim in federal district court following exhaustion of his administrative remedies does not constitute an improper delegation because the power delegated is not governmental at all. Rather than delegating any *governmental* authority, Section 399(b)(4)(A) merely establishes a "'jurisdictional prerequisite' to bringing a Section 399d retaliation claim in federal court." *Guile v. Durham Nephrology Associates*, 2016 WL 375077, at *2 (M.D.N.C. Jan. 29, 2016) (quoting *Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108, 120 (W.D.N.Y. 2014)). Congress regularly assigns limited authority to private parties to pursue private rights of action in conjunction with an administrative scheme; nothing about the FSMA's provision allowing a whistleblower to remove his claims to district court renders the whistleblower's choice governmental or legislative. Similar provisions are found in many other contexts, none of which has been successfully challenged on nondelegation grounds. *See* 49 U.S.C. § 20109(d)(3) (Federal Railroad Safety Act); 42 U.S.C. § 5851(b)(4) (Energy Reorganization Act); 18 U.S.C. §1514A(b)(1)(B) (Sarbanes-Oxley Act); 42 U.S.C. § 2000e-5(f)(1) (Title

27

VII of the Civil Rights Act of 1964); 28 U.S.C. § 2675(a) (Federal Tort Claims Act).

Courts have also upheld against nondelegation challenges far more substantial private conditions on federal action than what Perdue has alleged here. In *Currin v. Wallace*, Congress authorized the Agriculture Secretary to regulate tobacco auctions but not "unless two-thirds of the [tobacco] growers, voting at a prescribed referendum, favor it." 306 U.S. 1, 6 (1939). The Supreme Court rejected as "untenable" the claim that this veto over federal regulation was an unconstitutional delegation of government power to the private growers: "the required referendum does not involve any delegation of legislative authority. Congress has merely placed a restriction upon its own regulation by withholding its operation as to a given market 'unless two-thirds of the growers voting favor it.'" *Id.* at 15 (citation omitted). If the full weight of governmental power to *regulate* can be conditioned on the approval of the regulated entities themselves, then surely Congress can authorize Watts to remove his claims to district court. *See Pittston*, 368 F.3d at 395 (private entity's implementation of a federal retirement program did not violate private nondelegation doctrine). Indeed, if allowing a private party to choose its forum amounts to an exercise of governmental power in violation of the private nondelegation doctrine, then Perdue's decision to bring this action in the Eastern District of North Carolina as opposed to another jurisdiction under 28 U.S.C. § 1391(e)(1) would also be unconstitutional. Of course, this is not the case. Perdue's choice of forum no more reflects an exercise of governmental power than does Watt's decision to proceed before the ALJ.

A whistleblower complainant like Watts has no authority to prescribe any rules to anyone, let alone those affecting DOL's adjudication of a FSMA claim. Under the FSMA, a whistleblower does not "create[] the law or retain[] full discretion over any regulations." *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2679 (2024) (cited at Pl.'s MSJ at 25). Indeed, Watts has no role whatsoever in any of DOL's investigative or adjudicative decisions, and it is DOL and the federal judiciary, not Watts, who determines whether a violation of the FSMA's whistleblower protection provisions has occurred. *See* 21 U.S.C § 399d(b)(2)(A) ("the Secretary shall initiate an investigation and determine whether there is reasonable cause to believe that the complaint has merit"); *id*. § 399d(b)(2)(C)(iii) ("The

28

Secretary may determine that a violation of subsection (a) has occurred"). Even if Watts' ability to proceed before an ALJ or a district court could be construed as an exercise of governmental power, there is thus no doubt that Watts "function[s] subordinately" to DOL, and that DOL has "authority and surveillance" over the finding of whatever violation he alleges, rendering the delegation permissible. *Pittston,* 368 F.3d at 394.

## V. Perdue Failed to Plausibly Allege a Due Process Claim

In its final claim, Perdue briefly argues that the administrative proceedings violate the Due Process Clause of the Fifth Amendment in a variety of ways. Pl.'s MSJ at 26-27. Even if the Court had jurisdiction over these claims, *see supra* 6-8, they fail as a matter of law. All of Perdue's due process challenges consist of objections to hypothetical future acts which have not (and may never) occur. To prevail on a procedural due process claim, Perdue must "show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (cleaned up). Perdue has made no such showing here. Its claims amount to wholly speculative "facial challenge[s]," where it "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (citation omitted). None of Perdue's due process arguments clear that high bar for relief.

Perdue first complains about the ALJ's denial of its third-party subpoena request, arguing that "[d]ue process is denied when an ALJ relies upon evidence as the basis for decision yet denies a request to subpoena directly related documents or testimony." Pl.'s MSJ at 26. But Perdue does not allege that such a violation has actually occurred here, nor could it: the ALJ has not ruled on Watts' case, and thus cannot have "relie[d] upon" such evidence "as the basis for [her] decision." *Id.* Under its own theory, then, denial of Perdue's subpoena request poses no constitutional problem if the ALJ does not "rel[y] upon" the disputed evidence in her final decision. Regardless, *Souch v. Califano*, 599 F.2d 577 (4th Cir. 1979), cited by Perdue for the proposition that denial of a subpoena violates due process, Pl.'s MSJ at 26, is inapposite. In *Souch* (an as-applied case), the Fourth Circuit observed that the claimant possessed a "right to subpoena derived

29

from 20 C.F.R. § 404.926." 599 F.2d at 580. But Perdue fails to establish a comparable right for hearings that themselves lack authorization for third-party subpoenas, like this FSMA action. *See* Compl. Ex. 12 (citing *Fagan v. Dep't of the Navy*, ARB No. 2023-00006, ALJ No. 2021-CER-00001 (Feb. 28, 2024)).

The same is true of Perdue's remaining due process arguments, including: (1) its complaint that DOL possesses an *unexercised* power to waive rules governing its proceedings upon "a finding of good cause or 'special circumstances not contemplated' by the regulations;" (2) its complaint that Watts possesses an *unexercised* power to "move the action to federal court" under certain circumstances, and (3) its observation that DOL possesses the *unexercised* power to "join the case and dually serve as litigant/prosecutor and adjudicator/ultimate decisionmaker." Pl.'s MSJ at 26-27 (citations omitted). Again, none of these actions has actually occurred in Perdue's case, and Perdue does not argue otherwise. Rather, Perdue merely implies that DOL or Watts *might* take such actions in the future, but that speculation is insufficient to establish standing for a ripe due process claim, let alone state a claim on the merits. *Clapper*, 568 U.S. at 409. *See also, supra* 24-25; *Withrow v. Larkin*, 421 U.S. 35, 58 (1975) ("the combination of investigative and adjudicative functions does not, without more, constitute a due process violation").

Finally, Perdue's complaint that the ALJ rejected some of its constitutional arguments when denying its motion to dismiss (Pl.'s MSJ at 26) is merely an expression of disagreement with an interlocutory agency ruling. Perdue's argument can be raised on appeal to the ARB once a final decision is reached by the ALJ in Perdue's case, and on appeal to the Fourth Circuit if Perdue again is defeated. Perdue does not explain how a familiar limitation on interlocutory review deprives it of any constitutionally protected interest. The Due Process Clause does not serve as a guarantee of interlocutory appeal over every interim decision made during an ALJ adjudication that a party disagrees with, particularly when Article III judicial review is available in due course, and the FSMA itself expressly bars Perdue's collateral attack. *Cf. Chau*, 72 F. Supp. 3d at 430 n.104 (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 (2009)).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment, grant the Government Defendants' motion, and either dismiss the complaint as to the Government Defendants, or enter judgment in favor of the Government Defendants on all claims.

Dated: March 12, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

JULIE STRAUS HARRIS
CHRISTOPHER R. HALL
Assistant Branch Directors

*/s/ Andrew J. Rising*
ANDREW J. RISING
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12520
Washington, DC 20005
(202) 514-0265
Andrew.J.Rising@usdoj.gov

*Counsel for the Government Defendants*

31