## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
### No. 5:24-CV-00477-BO-RJ

**PERDUE FARMS INC.,**

    Plaintiff,

    **v.**

**LORI CHAVEZ-DEREMER**, in her
official capacity as Secretary of the
United States Department of Labor, *et al.*,

    Defendants.

## MEMORANDUM IN SUPPORT OF WATTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.  SUMMARY OF OPPOSITION AND CROSS-MOTION ................................... 5

   A. Statutory Mandate for Exclusive Appellate Review: ........................ 5

   B. Misapplication of Recent Supreme Court Precedents: ........................ 5

   C. Waiver by Untimely Assertion: ........................................... 6

   D. Here-and-Now Injury and the Judicial Role: .............................. 6

II.  BACKGROUND & PROCEDURAL POSTURE ........................................ 7

   A. Factual Background ..................................................... 7

   B. Procedural History ..................................................... 8

III.  STANDARD OF REVIEW ..................................................... 10

IV.  THE DISTRICT COURT HAS NO JURISDICTION: PERDUE MISAPPLIES FSMA'S EXCLUSIVE REVIEW PROVISIONS: ................................................ 11

   A. Lack of Jurisdiction of All Constitutional Claims Generally: ........... 11

   B. Lack of Seventh Amendment Jurisdiction in Particular: .................. 13

V.  PERDUE HAS WAIVED ALL OF THE CONSTITUTIONAL CHALLENGES ASSERTED IN THIS ACTION .......................................................... 15

VI.  THE SEVENTH AMENDMENT DOES NOT APPLY BECAUSE ENGLISH COMMON LAW HAD NO TORT OR BREACH OF CONTRACT CLAIM LIKE THE FSMA. .............. 16

VII.  THE TWO-TIER REMOVAL PROTECTION FOR THE ALJ DOES NOT VIOLATE ARTICLE II ................................................................. 19

VIII.  SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST PERDUE ON WATTS' CROSS-MOTION FOR SUMMARY JUDGMENT ................................... 21

   A. Standard of Review for Cross Motions for Summary Judgment: ............. 21

   B. Statement of the Undisputed Facts: .................................... 22

   C. Watts' Arguments and Conclusions of Fact: ............................. 22

IX. LEGAL ARGUMENT OF CROSS-MOTION ......................................... 26

X.  CONCLUSION ............................................................. 26

CERTIFICATE OF COMPLIANCE .................................................. 27

CERTIFICATE OF SERVICE ..................................................... 29

# TABLE OF AUTHORITIES

## CASES

*Allen v. Admin. Review Bd.,* 514 F.3d 468, 476 n. 3 (5th Cir.2008)............................................ 18

*Axon Enter., Inc. v. Fed. Trade Comm 'n,* 598 U.S. 175, 185 (2023)......................................... 11

*Bacon v. City of Richmond, Virginia,* 475 F.3d 633, 637–38 (4th Cir. 2007). ........................... 21

*Bowles v. Russell,* 55 1 U.S. 205, 212-13 (2007) .................................................................. 11,13

*Curtis Pub. Co. v. Butts,* 388 U.S. 130, 143 (1967)................................................................... 15

*Decker Coal Co. v. Pehringer,* 8 F.4th 1123, 1133-36 (9th Cir. 2021) ....................................... 20

*Feldman v. L. Enf't Assocs. Corp.,* 752 F.3d 339, 348 (4th Cir. 2014)........................................ 18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,* 561 U.S. 477, 507 (2010)....................... 12,20

*Greidinger v. Davis,* 988 F.2d 1344, 1346 (4th Cir. 1993)......................................................... 22

*Jarkesy v. S.E.C.,* 803 F.3d 9 (D.C. Cir. 2015). ................................................................... 13-14

*Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) ........................................................................... 15

*K&R Contractors, LLC v. Keene,* 86 F.4th 135, 140, 148 (4th Cir. 2023)................................... 20

*Kerns v. United States,* 585 F.3d 187, 193 (4th Cir. 2009)......................................................... 10

*Klopfenstein v. PCC Flow Techs. Holdings, Inc.,* ARB Case No. 04–149, 2006 WL 3246904, at
  *13 (Dep't of Labor May 31, 2006))................................................................................... 18

*Landry v. FDIC,* 204 F.3d 1125 (C.A.D.C.2000)...................................................................... 19

*Lockheed Martin Corp. v. Dep't of Labor,* 717 F.3d 1121, 1136 (10th Cir.2013) ...................... 18

*Louisiana v. Fed. Deposit Ins. Corp.,* 919 F.3d 916, 922 (5th Cir. 2019).................................. 13

*Marano v. Dep't of Justice,* 2 F.3d 1137, 1140 (Fed.Cir.1993) ................................................. 18

*McLaughlin v. N. Carolina Bd. of Elections,* 850 F. Supp. 373, 376 (M.D.N.C. 1994), aff'd, 65
  F.3d 1215 (4th Cir. 1995.................................................................................................... 22

*Michel v. State of Louisiana,* 350 U.S. 91 (1955)..................................................................... 15

*Morrison v. Olson,* 487 U.S. 654, 690 (1988). ......................................................................... 20

*Murray v. UBS Sec., LLC,* 601 U.S. 23, n.l (2024)................................................................... 18

*Penhallow v. Doane's Adm'rs,* 3 U.S. 54, 116, 1 L. Ed. 507 (1795)........................................... 19

*Rosenthal & Co. v. Bagley,* 581 F.2d 1258 (7th Cir.1978)......................................................... 16

Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.2003) ......................................................... 21

*S.E.C. v. Jarkesy,* 603 U.S. 109 (2024)................................................................................. 8,10

*Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 212 (1994)..................................................... 12

*Ticor Title Ins. Co. v. F.T.C.,* 814 F.2d 731, 739 (D.C. Cir. 1987) ( ......................................... 16

*United States v. Chittenden*, 896 F.3d 633, 639 (4th Cir. 2018)...................................................... 15

*W. Am. Ins. Co. v. Terra Designs, Inc.,* No. 5:11CV80-RLV, 2014 WL 1309110, at *3
(W.D.N.C. Mar. 31, 2014). .................................................................................................. 21

*Wachovia Bank & Tr. Co., N. A. v. United States*, 499 F. Supp. 615, 615 (M.D.N.C. 1980). ..... 22

**STATUTES**

12 U.S.C. § 1818(h) .............................................................................................................. 13
21 U.S.C. § 399d ............................................................................................................. passim
21 U.S.C. § 467f .................................................................................................................... 9
5 U.S.C. § 7521 ............................................................................................................... 19-20
5 U.S.C. §§ 556(c) ............................................................................................................... 19

**REGULATIONS**

29 C.F.R. § 1987.110(a)....................................................................................................... 21
29 C.F.R. §§ 1987.106 ...................................................................................................... 8,20

# I. SUMMARY OF OPPOSITION AND CROSS-MOTION

Defendant Craig Watts, by and through counsel, respectfully submits his Memorandum in Support of Watts' Opposition to Plaintiff Perdue Farms Inc.'s Motion for Summary Judgment and Watts' Cross-Motion for Summary Judgment. At the core of this Opposition lies an inexorable argument: Perdue's attempt to assert constitutional challenges to the structure and operation of the Department of Labor's administrative proceedings is both procedurally premature and substantively barred in this forum. This Court is being asked to review issues that, by clear statutory design, are reserved exclusively for appellate adjudication after the culmination of the administrative process. Watts' opposition sets forth several interrelated arguments that, taken together, render Perdue's claims untenable in a district court.

## A. <u>Statutory Mandate for Exclusive Appellate Review:</u>

The Food Safety Modernization Act ("FSMA") unmistakably provides that any constitutional challenges arising out of whistleblower proceedings must be channeled to the appropriate United States Court of Appeals after the issuance of a final agency order. The language of FSMA leaves no room for district court review of such claims at this early stage. Watts contends that the statutory scheme not only reflects Congress' deliberate allocation of judicial review but also serves to insulate the administrative process from premature constitutional adjudication. Allowing this Court to entertain Perdue's claims would upset the balance that Congress meticulously established, effectively permitting a second bite at the apple of review that is constitutionally and procedurally barred.

## B. <u>Misapplication of Recent Supreme Court Precedents:</u>

Perdue's reliance on recent Supreme Court decisions—including *Axon Enter., Inc. v. FTC* and *SEC v. Jarkesy*—mischaracterizes the very nature of the constitutional challenges at issue. While those decisions address the limits of administrative adjudication and the scope of

appellate review, they simultaneously reaffirm that any deviation from the designated statutory process not only contravenes legislative intent but also undermines the separation of powers. In this matter, Watts demonstrates that Perdue's claims are not ripe for direct judicial review in an Article III forum because the claims arise from ongoing administrative proceedings that have not yet produced a final, reviewable order. Moreover, by seeking to bypass the mandated administrative adjudication, Perdue's approach attempts to import constitutional claims into a setting expressly designed for the resolution of private disputes by an impartial, final appellate review.

### C. **Waiver by Untimely Assertion:**

Further compounding the jurisdictional infirmity of Perdue's constitutional arguments is its failure to timely assert these claims during the lengthy and protracted administrative proceedings. Watts asserts that Perdue's omission in raising these issues at the earliest practicable opportunity constitutes an effective waiver. By not presenting its constitutional challenges during the Department of Labor's adjudicative process—and instead seeking to resurrect them at this late stage—Perdue has forfeited any entitlement to district court review. Such untimeliness undermines any prospect that this Court might entertain its constitutional arguments, particularly when the statutory framework and prior case law demand that such challenges be preserved for the appellate review after the agency has fully exercised its expertise.

### D. **Here-and-Now Injury and the Judicial Role:**

Finally, the so-called "here-and-now" injury alleged by Perdue is illusory. Even if the court were to entertain the constitutional challenges, the injury alleged is not one that can be remedied by immediate district court intervention. Rather, the FSMA's judicial review scheme is designed to ensure that any constitutional issues are addressed only after the agency has rendered its final determination. This approach minimizes judicial interference in matters where

administrative expertise is paramount and upholds the principle that constitutional review of agency action should occur in a manner that respects both the separation of powers and the statutory allocation of review rights. In this respect, Perdue's reliance on constitutional claims to contest the structure of an ongoing administrative proceeding is both procedurally and substantively flawed.

For the reasons below, Perdue's Motion for Summary Judgment must be denied, and Watts' Cross-Motion for Summary Judgment granted. The proper forum for Perdue's claims is not this district court but, after the completion of the administrative process, the appropriate United States Court of Appeals.

## II. BACKGROUND & PROCEDURAL POSTURE

### A. Factual Background

In 2015, Craig Watts instituted a whistleblower action against Perdue Farms in the U.S. Department of Labor pursuant to FSMA, 21 U.S.C. § 399d. Watts is a former poultry farmer in Robeson County, North Carolina who previously raised Perdue Farms (Perdue) chickens. Watts claims, under the FSMA, that Perdue retaliated against him after he publicly alleged that Perdue had provided him with sick and dying birds. [No. 5:24-CV-477-BO, DE 6-2] Watts invited a film crew to his farm to film the conditions of chickens in his chicken houses, which Watts asserts were housed pursuant to Perdue's rules and restrictions. In 2016, the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") reviewed Watts' complaint and determined that, while Perdue is a covered entity under the FSMA whistleblower provisions, Watts was not an employee for purposes of § 399d, and thus OSHA lacked jurisdiction to consider the complaint. [No. -477, DE 6-3]. Watts exercised his right to request a hearing before a Department of Labor (DOL) Administrative Law Judge (ALJ) and years of administrative

litigation ensued. *See* 29 C.F.R. § 1987.106(a). Watts' DOL case is currently scheduled for a hearing before an ALJ on June 23, 2025. [No. -594, DE 1-8].

Perdue instituted this action in this Court on August 20, 2024. In its complaint, Perdue seeks declaratory and injunctive relief and alleges that the DOL administrative proceedings are unconstitutional on five separate grounds (1)that they violate Article III; (2) that they violate Perdue's right to a jury trial under the Seventh Amendment, as recently addressed in *Securities & Exch. Comm'n v. Jarkesy*, 603 U.S. 109 (2024) ; (3) that they violate the President's removal authority under Article II of the Constitution; (4) that they violate the nondelegation doctrine and separation of powers under Article I; and (5)  that they violate the Due Process Clause of the Fifth Amendment.

### B.  Procedural History

Mr. Watts initially filed a whistleblower retaliation complaint under the employee protection provisions of the Food Safety Modernization Act, 21 U.S.C. § 399d, on February 23, 2015.  *See* Notice of Whistleblower Complaint, Compl., Ex. 1, ECF No. 6-2.  Almost a year later, OSHA issued its finding and determination that Perdue was covered by FSMA provisions, but that Mr. Watts was not an "employee" under the FSMA, and therefore OSHA lacked jurisdiction to investigate. *See* Feb. 8, 2016 OSHA Findings Letter, Compl., Ex. 2, ECF No. 6-3. Mr. Watts timely requested a hearing before an ALJ pursuant to 29 C.F.R. Part 1987.106(a), and years of legal battles with Perdue ensued within DOL's administrative process.  *See* Compl., Exs. 3-10, ECF Nos. 6-4 – 6-11.

Perdue's first motion to dismiss asserted a jurisdictional challenge, claiming that the Department of Labor, and therefore, the Office of Administrative Law Judges ("OALJ"), lacked subject matter jurisdiction over Mr. Watts' claims, and that the Department of Agriculture, rather than the Food and Drug Administration ("FDA"), was the statutory body empowered to hear and

enforce Watts' claims under the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. § 467f. *See* Jan. 6, 2017 ALJ Decision and Order, Compl. Ex. 3, ECF No. 6-4. This argument was initially successful; in March of 2019, the ALJ granted Perdue's motion to dismiss, and Mr. Watts timely appealed that decision to the Administrative Review Board (ARB), which affirmed the ALJ's dismissal of the complaint. *See* Mar. 5, 2019 ARB Decision, Compl. Ex. 4, ECF No. 6-5. Mr. Watts then appealed the ARB's decision to the Fourth Circuit, which, upon further briefing, granted DOL's motion for voluntary remand back to the ARB for further consideration. *See* Motion for Voluntary Remand, Compl., Ex. 5, ECF No. 6-6 and Order Granting Motion for Remand, Compl. Ex. 6, ECF No. 6-7.

In a pivotal moment, the Food and Drug Administration (FDA) filed an amicus brief refuting Perdue's argument that the FSMA did not cover live poultry intended for consumption as food. *See* FDA Amicus Brief, Compl., Ex. 7, ECF No. 6-8. Following FDA's amicus confirming the FSMA's coverage of live poultry, in May 2020 the ARB vacated its previous decision dismissing Mr. Watts' claims and remanded the case to the OALJ for further consideration. *See* May 28, 2020 ARB Decision, Compl. Ex. 8, ECF No. 6-9. Mr. Watts then filed his supplemental complaint with the OALJ in April 2022. *See* Supplemental Whistleblower Complaint, Compl., Ex. 9, ECF No. 6-10.

Undeterred, Perdue again responded with a motion to dismiss, this time making four arguments as to why the complaint failed as a matter of law – (1) because Mr. Watts' did not "blow the whistle" under the FSMA; (2) because the complaint and supplemental complaint contain no allegations respecting animal feed; (3) because Mr. Watts was not an employee; and (4) because Perdue did not retaliate against Mr. Watts – all of which were rejected by the ALJ. *See* Oct. 21, 2022 ALJ Decision and Order, Compl. Ex. 10, ECF No. 6-11. At the end of July,

when discovery was set to close on August 12, Perdue submitted a letter requesting a temporary suspension of discovery and a conference before the ALJ "as soon as possible given time-sensitive issues resulting from the United States Supreme Court's recent decision in *S.E.C. v. Jarkesy*, 603 U.S. 109 (2024)." *See* Jul. 19, 2024 Letter Requesting Conference, Compl. Ex. 16, ECF No. 6-17. The ALJ swiftly denied these requests by Order dated July 23, 2024. *See* July 23, 2024 Order Denying Conference Call, Compl. Ex. 17, ECF No. 6-18. Perdue then filed its motion to dismiss to preserve its constitutional arguments for appellate review, and Mr. Watts filed his opposition on July 30, 2024. *See* Compl. Exs. 18-19, ECF Nos. 6-19, 6-20. On August 8, the ALJ denied Perdue's motion and ordered that the parties shall complete discovery no later than January 17, 2025. *See* Comp. Ex. 20, ECF No. 6-21.

## III. STANDARD OF REVIEW

Perdue's memorandum in support of its motion for summary judgment, (ECF 49), at pg. 8, sets out the general standard this Court uses in reviewing motions for summary judgment. However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). Here, the facts regarding subject matter jurisdiction are not disputed, nor are the procedural background facts, nor the exhibits incorporated into the complaint and now presented in Perdue's MSJ. While Watts does dispute the many fact arguments and fact conclusions asserting that the constitutional issues could not be determined in the administrative proceedings, or that Perdue was not on notice of the state of the law until recent Supreme Court decision, that kind of fact dispute is legal opinion, and therefore is not material under Rule 56.

## IV. THE DISTRICT COURT HAS NO JURISDICTION: PERDUE MISAPPLIES FSMA'S EXCLUSIVE REVIEW PROVISIONS:

At pages 8 through 12 of Perdue's Memorandum in Support of its Motion for Summary Judgment, Perdue argues that "[p]ursuant to *Axon*, this Court has subject-matter jurisdiction over Perdue's constitutional challenges to the structure of the DOL proceedings." DE 49 at p. 8. However, as explained below, contrary to Perdue's assertions, *Axon* is not "on all fours here" because the FSMA explicitly divests the district court of jurisdiction to review Perdue's claims at this stage. *See* DE 49 at p. 9.

### A. Lack of Jurisdiction of All Constitutional Claims Generally:

Under 21 U.S.C. § 399d(b)(5)(A), judicial review of DOL decisions in FSMA whistleblower cases are raised directly to the appropriate United States Court of Appeals. The FSMA further provides for "no judicial review" of any decision of the DOL "with respect to which review could have been obtained" in the appropriate court of appeals. *Id.* at § 399d(b)(5)(B).

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles v. Russell,* 55 l U.S. 205, 212-13 (2007). Congress "may do so explicitly, providing in so many words that district court jurisdiction will yield. But Congress also may do so implicitly, by specifying a different method to resolve claims about agency action." *Axon Enter., Inc. v. Fed. Trade Comm 'n,* 598 U.S. 175, 185 (2023).

In *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185–86 (2023), the Court reiterated that when Congress provides for administrative adjudication followed by direct circuit court administrative review, "the creation of such a review scheme for agency action divests

district courts of their ordinary jurisdiction over the covered cases", citing *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (noting that statutory schemes for agency review are "generally exclusive", and hence Congress intended that the "agency effectively fills in for the district court, with the court of appeals providing judicial review." However, the Court in unusual case will consider an exception depending upon "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure'", the so-called Thunder Basin factors. *Axon*, id. citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994). Those factors are the Court stated:

> First, could precluding district court jurisdiction foreclose all meaningful judicial review of the claim? Next, is the claim wholly collateral to the statute's review provisions? And last, is the claim outside the agency's expertise? *"*When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction'." *Free Enterprise Fund*, 561 U.S. at 489.

Perdue has not established all three factors. Obviously, the Fourth Circuit will give "meaningful judicial review" from the administrative appeal to the DOL Administrative Review Board (ARB). Second, the constitutional claims are not "wholly collateral" to the FSMA because the statute carefully sets out the two tier federal court review as part of the statute. And last, the ARB judges as a group have as much "expertise" as any other lawyer to consider that statutory review process and apply the Seventh Amendment to it. It's not patents, and trademarks, or security clearances or rocket science.

Here, Congress has explicitly provided that there shall not be judicial review in a civil or criminal proceeding of any order that could be reviewed by the appropriate court of appeals. 21 U.S.C. § 399d(b)(5)(B). Perdue's challenges to an ongoing DOL administrative proceeding are not properly before this Court because the FSMA explicitly bars district court jurisdiction over claims like Perdue's. Under § 399d(b)(5)(A), Congress requires that judicial review be channeled directly to an appropriate "United States Court of Appeals." 21 U.S.C. § 399d(b)(5)(A). And §

399d(b)(5)(B), entitled "[n]o judicial review," specifically provides that "[a]n order of the Secretary with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding." *Id*. § 399d(b)(5)(B). Because the statute explicitly and exclusively channels reviews of claims involving FSMA whistleblower proceedings to the courts of appeals and prohibits judicial review of such claims in any other proceeding, this Court needs look no further to confirm its lack of jurisdiction. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider," including "when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). Perdue is stuck with the state of the law that "sometimes Congress leapfrogs district courts by channeling claims through administrative review and directly to federal appellate courts". *Bank of Louisiana v. Fed. Deposit Ins. Corp.,* 919 F.3d 916, 922 (5th Cir. 2019) (internal quotation and brackets omitted). As the Fifth Circuit explained:

> Even setting aside the specific jurisdictional bar in section 1818(i)(2), we have described the section 1818 scheme as a "comprehensive system for judicial review" of agency orders, and a "detailed framework ... for orderly review of the various stages of enforcement". Following an administrative hearing, the Board reviews the ALJ's recommendation *de novo* and issues a final order, which is routed for "exclusive" review directly to a federal appellate court. *See* 12 U.S.C. § 1818(h)(1)–(2). *** This calibrated structure is, for present purposes, materially the same as review structures the Supreme Court and sister circuits have found expressive of Congress' intent to preclude district court jurisdiction.

*Bank of Louisiana v. Fed. Deposit Ins. Corp.,* id. 924, citing *Jarkesy v. S.E.C.,* 803 F.3d 9, 30 (D.C. Cir. 2015). As explained below, the Fifth Circuit citation to *Jarkesy* is fatal to Perdue's demand for district court review of its Seventh Amendment argument.

### B.   Lack of Seventh Amendment Jurisdiction in Particular

George Jarkesy ultimately won in the Supreme Court with an affirmance of the circuit court's direct judicial review upholding his Seventh Amendment rights. But the back story is

what's important here: Jarkesy tried to do what Perdue now wants to do in bypassing the administrative process and direct circuit court review. The District of Columbia district court and circuit court had to put him on the right path, denying him 28 USC 1331 federal jurisdiction, and dismissing him with the instruction to follow the jurisdictional rules that Congress prescribed. To wit, "Jarkesy must continue to press his various challenges to the Commission's enforcement proceeding before the Commission itself", the court held in *Jarkesy v. S.E.C.*, 803 F.3d 9, 30 (D.C. Cir. 2015), and "[s]hould the agency's final order be adverse to him, Jarkesy can then raise his challenges in a petition for review to a court of appeals." As the court explained in more detail:

> Petitioners sued in the U.S. District Court for the District of Columbia to enjoin the agency proceedings, arguing that the proceedings infringed on various constitutional rights. But the district court, and later the U.S. Court of Appeals for the D.C. Circuit, refused to issue an injunction, deciding that the district court had no jurisdiction and that Petitioners had to continue with the agency proceedings and petition the court of appeals to review any adverse final order.

*Jarkesy v. SEC*, id. at 40 (D.D.C. 2014), *aff'd sub nom. Jarkesy v. S.E.C.*, 803 F.3d 9 (D.C. Cir. 2015). And no cry of unfairness could change this result:

> In sum, the statutory regime embodied in the Securities Act sets forth an exclusive mechanism for the plaintiffs to pursue their claims: first, before an ALJ, then before the SEC's Commissioners, and finally, if necessary, before a Court of Appeals. To the extent that the plaintiffs believe their cause has been prejudged by the SEC's Commissioners, they may seek review, if necessary, before the Court of Appeals, but the statute leaves no room for this Court to provide them the relief they seek.

*Jarkesy v. SEC*, id. at 40. In the end, Perdue might win on Fourth Circuit direct judicial review from an adverse decision of the ARB. And just as importantly, Perdue may even win with the ALJ and DOL so it never has to pursue its Seventh Amendment rights. But the company must follow the jurisdictional rules, as the D.C. Circuit held:

> The plaintiffs' Complaint must be dismissed because this Court lacks subject matter jurisdiction over their claims. *See* FED. R. CIV. P. 12(h)(3). Moreover, because the proposed amended complaint does not add any facts to correct the fatal

jurisdictional problems with the plaintiffs' claims, the plaintiffs' Motion to Amend is denied as futile.

*Jarkesy v. United States Sec. & Exch. Comm'n*, 48 F. Supp. 3d 32, 40 (D.D.C. 2014),

## V. PERDUE HAS WAIVED ALL OF THE CONSTITUTIONAL CHALLENGES ASSERTED IN THIS ACTION

Perdue has waited too long to bring an independent action in a district court to vindicate the constitutional rights it alleges in Counts I, II, III, IV and V of the complaint and in its MSJ. It should have asserted them during its nine years of litigation in the Department of Labor, and the U.S. Court of Appeals for the Fourth Circuit. The Supreme Court's most recent decisions such as *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *SEC v. Jarkesy*, 603 U.S. 109 (2024) elaborated existing law, but the same legal arguments Perdue now makes were raised by the Axon company in 2019 and by George Jarkesy in 2014. By 2021, at least one circuit court had agreed with the constitutional arguments of Axon and Jarkesy, and the Supreme Court upheld those decisions. Yet, in 2022, when Perdue filed its motion to dismiss before the ALJ, it raised no constitutional argument. Indeed, it raised none mid-2024. One cannot sleep on their constitutional rights waiting for the bright sunshine of a Supreme Court win by other people. And as the Supreme Court reiterated in *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143 (1967):

> Of course it is equally clear that even constitutional objections may be waived by a failure to raise them at a proper time, *Michel v. State of Louisiana*, 350 U.S. 91 (1955), but an effective waiver must, as was said in *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) be one of a 'known right or privilege.'

*See also*, *United States v. Chittenden*, 896 F.3d 633, 639 (4th Cir. 2018) holding an exception to waiver "applies when 'there was strong precedent' prior to the change, such that the failure to raise the issue was not unreasonable and the opposing party was not prejudiced by the failure to raise the issue sooner." That is because "waiver demands conscientiousness, not clairvoyance, from parties", *id*. Citing *Curtis Pub. Co. v. Butts*; and where a party would not have reason to

know that the law was getting ready be overruled, they are not penalized by waiver. But where they simply fail to make constitutional claims when the law is supportive of those claims, then that is waiver.

Furthermore, courts require administrative issue exhaustion of constitutional claims as a general rule because it is usually appropriate under an agency's practice. "That general rule has frequently been applied even where the plaintiffs have challenged the very authority of the agency to conduct proceedings against them." *See, e.g.*, *Ticor Title Ins. Co. v. F.T.C.,* 814 F.2d 731, 739 (D.C. Cir. 1987) (collecting cases). Perdue has long since had a right to assert its constitutional right to a jury trial, or to an Article III judicial officer, under the Seventh Amendment and under Article III, per Counts I and II. *See, e.g.*, *Rosenthal & Co. v. Bagley,* 581 F.2d 1258 (7th Cir.1978) (plaintiff challenged the authority of the Commodity Futures Trading Commission to adjudicate reparations claims brought by members of the public against registered commodities brokers, arguing that the statute conferring such authority violated the Seventh Amendment by abridging the right to jury trial in civil cases). By failing to timely assert those rights in the past nine years litigating in the Department of Labor and the Fourth Circuit, Perdue has waived those rights.

## VI. THE SEVENTH AMENDMENT DOES NOT APPLY BECAUSE ENGLISH COMMON LAW HAD NO TORT OR BREACH OF CONTRACT CLAIM LIKE THE FSMA.

At pages 13 through 15 of its memoranda, Perdue argues that "Watts' retaliation claim under FSMA resembles late 18th-century English common law breach-of-contract and tort claims for compensatory damages." DE 49 at p. 13. This argument fails because a whistleblower claim under the FSMA, such as Watts' claim against Perdue, constitutes a specialized public right of action, which serves the purpose of protecting the public by providing an administrative,

equitable remedy for whistleblowers who are unlawfully retaliated against. Bringing a claim for relief under the FSMA consists of four administrative phases: (a) an OSHA "investigation" that has no quasi-judicial adjudicative function; (b) an OALJ proceeding if either party in its unfettered discretion seeks an administrative de novo review of the OSHA findings and order; and (c) Administrative Procedures Act (APA) style review by the ARB; and (d) judicial review by a U.S. Court of Appeals applying the APA.

OSHA investigators and administrative law judges within the OALJ receive special training and acquire specialized experience in applying federal whistleblower statutes, especially those like the FSMA which prescribe a shifting contributory-factor burden of proof scheme utterly unknown to the common law. The entirety of this administrative mechanism under the FSMA is to protect America's food supply, and toward that objective, the FDA is authorized to enter the administrative litigation as it did in this case pursuant to its statutory mission of protecting that food supply. The FDA is a highly specialized administration within the executive branch.

The FSMA does not authorize the adjudication of contract rights, or tort claims of any kind, and the parties may assert breach of contract, wrongful termination and infliction of emotional distress litigation in the courts by separate action. Section 399d(c) of the FSMA-Effect of section, provides:

> (1) Other laws: Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law.
>
> (2) Rights of employees: Nothing in this section shall be construed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement. The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment.

The FSMA protects only employees in the food industry who disclose food safety dangers to the public, Congress, public officials, or company employees. Outside of this public function, the FSMA provides no right of action for vindicating private rights of action.

The FSMA does not require a covered employee to make any showing of intent or motivation (nor legal causation), but only a showing of "contributing factor" that tended to affect in any way imposition of an adverse action. 21 U.S.C.A. § 399d(2)(C)(iii), cited in *Murray v. UBS Sec., LLC,* 601 U.S. 23, n.l (2024) (FSMA is a statute like the Sarbanes Oxley Act whistleblower provision, for which no showing of intent is required). The English common law recognized no such causation-free or intent-free tort action, nor any other action analogous to the FSMA. But the Fourth Circuit does:

> "A contributing factor is 'any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.'" *Allen v. Admin. Review Bd.,* 514 F.3d 468, 476 n. 3 (5th Cir.2008) (citing *Klopfenstein v. PCC Flow Techs. Holdings, Inc.,* ARB Case No. 04–149, 2006 WL 3246904, at *13 (Dep't of Labor May 31, 2006)). "This element is broad and forgiving," *Lockheed Martin Corp. v. Dep't of Labor,* 717 F.3d 1121, 1136 (10th Cir.2013), and "[t]his test is specifically intended to overrule existing case law, which requires a whistleblower to prove that his protected conduct was a 'significant', 'motivating', 'substantial', or 'predominant' factor in a personnel action in order to overturn that action," *Marano v. Dep't of Justice,* 2 F.3d 1137, 1140 (Fed.Cir.1993) (construing the contributing factor standard in a Whistleblower Protection Act case and citing explanatory statements from the congressional record).

*Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014). Supreme Court Justice William Peterson, appointed by President Washington in 1793, might have been shocked and dismayed to know that in about 150 years Congress would enacting laws that allowed employees to recover civil damages without showing any intent or motivation, but only that because of some protected words they said that " in any way affected" the employer's action, the employer would have to defend itself by "clear and convincing evidence". Justice Paterson might have written these words:

The cases, therefore, cited to show, that the common law is of general jurisdiction, and that the court of King's bench, prohibits, controuls, and keeps within their line, Admiralty Courts, Spiritual Courts, and other courts of a special, limited jurisdiction, do not, I conceive, touch this case.

*Penhallow v. Doane's Adm'rs*, 3 U.S. 54, 116, 1 L. Ed. 507 (1795).

## VII.   THE TWO-TIER REMOVAL PROTECTION FOR THE ALJ DOES NOT VIOLATE ARTICLE II

At pages 21 through 23 of its memoranda, Perdue argues that it is entitled to summary judgment on Count III, the violation of the removal power of Article II's Take Care Clause because "[d]ual-layer removal protection violates that provision." DE 49 at p. 21. This argument fails because, for the reasons argued by the Government in opposition to Perdue's motion for preliminary injunction, to the extent the Court interprets 5 U.S.C. § 7521(a) as providing two layers of protections for DOL OALJ's, those restrictions do not render the administrative decisions unconstitutional.  That is, because an ALJ theoretically can't be fired by the President at will does not provide a cause of action for the decisions they render. There must be an injury, there must be standing, and a case or controversy—beyond the theoretical. When the Supreme Court struck down the unique for-cause protections at issue in *Free Enterprise Fund*, it noted that it was not declaring a generally applicable rule prohibiting two layers of removal for ALJs under the same statute as controls this case. 5 U.S.C. §§ 556(c), 3105:

> Nothing in our opinion, therefore, should be read to cast doubt on the use of what is colloquially known as the civil service system within independent agencies. [FN] 10. For similar reasons, our holding also does not address that subset of independent agency employees who serve as administrative law judges. See, *e.g.,* 5 U.S.C. §§ 556(c), 3105. Whether administrative law judges are necessarily "Officers of the United States" is disputed. See, *e.g., Landry v. FDIC,* 204 F.3d 1125 (C.A.D.C.2000). And unlike members of the Board, many administrative law judges of course perform adjudicative rather than enforcement or policymaking functions, see §§ 554(d), 3105, or possess purely recommendatory powers. The Government below refused to identify either "civil service tenure-protected employees in independent agencies" or administrative law judges as "precedent for the PCAOB." 537 F.3d 667, 699, n. 8 (C.A.D.C.2008) (Kavanaugh, J., dissenting).

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 507 (2010).

First, DOL ALJs differ from the officers at issue in *Free Enterprise Fund* in myriad ways, each of which renders any dual-layer for-cause protection constitutionally unproblematic. *See generally Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133-36 (9th Cir. 2021) (upholding constitutionality of 5 U.S.C. § 7521 as applied to DOL ALJs). DOL ALJs "perform adjudicative functions" by taking "evidence and resolv[ing] contested questions of fact and law" in cases presented to them. *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 140, 148 (4th Cir. 2023). DOL ALJs thus cannot go out searching for policymaking opportunities. *Decker Coal*, 8 F.4th at 1133.

*Second*, Congress did not mandate the use of ALJs in connection with FSMA whistleblower retaliation claims, and did not mandate the purportedly dual-layered removal scheme. Congress directed only that a party must request a "hearing on the record" if he objects to OSHA's investigatory findings. 21 U.S.C. § 399d(b)(2)(B). It is DOL's own regulations that impose the requirement that an ALJ preside over these hearings. *See* 29 C.F.R. §§ 1987.106 to 1987.109. Thus, "Congress did not overstep here," since "[t]he President has broad executive power to order the [agency head] to change the [agency]'s regulatory scheme and remove ALJs from the adjudicatory process." *Decker Coal*, 8 F.4th at 1133-34; *see also Free Enter. Fund*, 561 U.S. at 497 (observing that "[t]he President can always choose to restrain himself in his dealings with subordinates"). Accordingly, the good-cause removal restriction scheme that Congress established to protect DOL ALJs causes no "interference with the President's exercise of the 'executive power' and his constitutionally appointed duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 690 (1988).

*Third and lastly*, any decision by a DOL ALJ is not necessarily the final determination in any case before that ALJ. Rather, an ALJ's decision is first subject to review by the ARB, 29 C.F.R. § 1987.110(a), and any decision of the ARB is subject to discretionary review by the Secretary of Labor, *id*. § 1987.110(e). The members of the ARB, like the Secretary of Labor, are removable at will. *See* Sec'y of Lab. Order No. 02-96, 61 Fed. Reg. 19,978, 19,979 (May 3, 1996) ("Appointment of a Member of the Board to a term not to exceed some time period shall not affect the authority of the Secretary to remove, in his or her sole discretion, any Member at any time."). Accordingly, the ALJs "make decisions that are subject to vacatur by people without tenure protection." *Decker Coal*, 8 F.4th at 1135. And the President is fully empowered to control the ARB's and the Secretary of Labor's secondary review of the ALJ's decision as the law and facts permit.

## VIII.   SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST PERDUE ON WATTS' CROSS-MOTION FOR SUMMARY JUDGMENT

### A.   <u>Standard of Review for Cross Motions for Summary Judgment:</u>

When faced with cross-motions for summary judgment, courts ordinarily must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.2003) (internal quotations omitted), and *Bacon v. City of Richmond, Virginia*, 475 F.3d 633, 637–38 (4th Cir. 2007). However, when the case comes before the court on cross-motions where the parties represent "there are no facts to be decided, no inferences to be draw from the stipulated facts, and the issues presented are purely legal questions, it is not necessary to consider the motions separately. *W. Am. Ins. Co. v. Terra Designs, Inc.,* No. 5:11CV80-RLV, 2014 WL 1309110, at *3 (W.D.N.C. Mar. 31, 2014).

### B. <u>Statement of the Undisputed Facts:</u>

Solely for purposes of summary judgment, Watts has stipulated to as much of Perdue's statement of material facts as possible and to the authenticity of the exhibits the company has presented. Therefore, no separate statement of undisputed facts is necessary to resolve this cross-motion for summary judgment. Even as late as the oral argument where "both sides agreed that the Court could consider all forty-four exhibits in support of the stipulated facts", and that "they would have no further evidence to submit in support of their claims or defenses", a court "[c]onsidering the nature of these stipulations", the court may "find the matter is appropriate for decision on the present record". *McLaughlin v. N. Carolina Bd. of Elections*, 850 F. Supp. 373, 376 (M.D.N.C. 1994), <u>aff'd,</u> 65 F.3d 1215 (4th Cir. 1995). Cross-motions on issues of law or declaratory judgment are often "based on stipulated facts". *McLaughlin v. N. Carolina Bd. of Elections*, 850 F. Supp. 373, 376 (M.D.N.C. 1994), <u>aff'd,</u> 65 F.3d 1215 (4th Cir. 1995), *Greidinger v. Davis*, 988 F.2d 1344, 1346 (4th Cir. 1993). In those circumstances, the district judge will consider the "stipulation of facts, briefs and arguments of counsel". *Wachovia Bank & Tr. Co., N. A. v. United States*, 499 F. Supp. 615, 615 (M.D.N.C. 1980).

### C. <u>Watts' Arguments and Conclusions of Fact</u>

#### 1. *Watts' FSMA Claims Are Not Analogous to Common Law Actions*

1.      Perdue Farms Inc. ("Perdue") seeks summary judgment based on five constitutional challenges to Department of Labor ("DOL") administrative proceedings initiated under Food Safety Modernization Act ("FSMA") whistleblower provisions (Ex. #22, MSJ p.1). These constitutional claims represent Perdue's sole basis for requested relief and jurisdiction in this Court.

2.      Perdue's interpretation of its own exhibits mischaracterizes the nature of Watts' claims and the administrative framework Congress established for whistleblower protection. The

same exhibits, properly understood, demonstrate why each constitutional challenge fails as a matter of law.

3.      Watts contends that FSMA whistleblower claims fall squarely within the public rights exception recognized in Supreme Court precedent. Ex. #10 establishes that Watts' claims arise directly from a comprehensive food safety regulatory scheme created by Congress and enforced by FDA to protect public health (Ex. #10 pp.4-6, MSJ pp.11-12).

4.      Perdue contends Watts' whistleblower claim resembles late 18th-century English common-law breach-of-contract and tort claims, satisfying the first prong of the *Jarkesy* test (MSJ p.13-14, p.20). This characterization fundamentally misinterprets the statutory nature of FSMA protections created by Congress.

5.      Exhibit #1 reveals Watts filed a complaint alleging retaliation for reporting food safety concerns directly connected to FSMA's regulatory framework, not a common law employment action (Ex. #1 p.1-2, MSJ p.11). Congress created this specialized administrative process specifically for whistleblower claims tied to food safety regulation.

6.      Unlike the securities fraud claims in *Jarkesy*, Watts' whistleblower allegations directly implicate a comprehensive food safety regulatory scheme. Ex. #10 details specific concerns about misleading "humanely raised" labeling that directly affects food safety, consumer protection, and potential FDCA violations regarding misbranded products (Ex. #10 pp.7-10, MSJ p.13).

### 2. *Watts Primarily Seeks Equitable Remedies Within Regulatory Framework*

7.      Perdue selectively quotes Ex. #10 paragraph 81 regarding emotional distress damages while ignoring the broader remedial context. The Supplemental Complaint seeks multiple forms of relief, including reinstatement which is a quintessentially equitable remedy not available in common law courts as a "legal remedy". (Ex. #10, MSJ p.22). Ex. #1 explicitly

seeks "all other relief available at law and equity" with emphasis on returning Watts to his prior position (Ex. #1 p.2, MSJ p.12).

### 3. FSMA Claims Fall Within Public Rights Exception

8.    The administrative record documented in Exhibits #4-9 demonstrates the specialized agency expertise involved in determining whether FSMA's whistleblower protections apply. Ex. #10 confirms that the ARB specifically remanded the case to utilize FDA's expertise regarding food safety regulation, showing the claims are intertwined with the regulatory scheme (Ex. #4-9, MSJ p.12-13).

### 4. Article III Judicial Power Claims Lack Merits

9.    Perdue contends the administrative proceedings violate Article III by removing a private rights dispute from judicial cognizance (MSJ p.27, p.20). This argument fails because FSMA whistleblower claims involve public rights within a comprehensive regulatory scheme designed by Congress.

10.    Ex. #10 documents how the FDA determined that FSMA whistleblower protection "protects from retaliation an employee who has engaged in protected activity pertaining to a violation or alleged violation of the FFDCA, or any order, rule, regulation, standard, or ban under the FFDCA" (Ex. #10 p.4, MSJ p.27). This places these claims squarely within established public rights doctrine.

11.    The administrative process documented in Exhibits #4-9 preserves Article III review following administrative adjudication, ensuring ultimate judicial oversight of any constitutional questions (Ex. #4-9, MSJ p.12-13). Ex. #10 specifically acknowledges the ARB and judicial review process, confirming the preservation of Article III oversight.

### 5. *Article II Removal Power Claims Lack Merit*

12.     Perdue claims DOL ALJs are unconstitutionally insulated from presidential oversight through dual-layer for-cause removal protections (MSJ p.28, p.21-22). Exhibits #13, #15, #18, and #21 demonstrate the ALJ applied binding precedent when making procedural rulings, not exercising unchecked authority. Ex. #13 specifically relies on the ARB's *Fagan* decision for quashing subpoenas, showing adherence to precedent rather than arbitrary action (Ex. #13-21, MSJ p.30).

### 6. *Perdue's Nondelegation Claims Lack Merit*

13.     Perdue argues FSMA violates the nondelegation doctrine by delegating legislative power to Watts without an "intelligible principle" (MSJ p.31, p.24). This mischaracterizes both the statutory scheme and the nature of Watts' whistleblower claims.

14.     The FSMA provisions allowing complainants to proceed in federal court after administrative exhaustion represent Congress's judgment about efficient resource allocation, not standardless delegation. Ex. #20 shows Watts chose to remain in the administrative forum Congress created precisely because it has specialized expertise in food safety regulation (Ex. #20 p.1-2, MSJ p.14).

### 7. *Perdue's Due Process Claims Lack Merit*

15.     Ex. #13 demonstrates the ALJ based her decision to quash subpoenas on binding ARB precedent in *Fagan*, not arbitrary action (Ex. #13 p.2-3, MSJ p.13). Adherence to binding precedent is the antithesis of a due process violation, even if the precedent limits discovery options.

16.     Exhibits #14-15 document Perdue's access to procedural mechanisms challenging adverse rulings, including motions for reconsideration and interlocutory appeal (Ex. #14-15, MSJ

p.13). The availability of these procedures, plus eventual Article III review, satisfies due process requirements under established precedent.

17.    Perdue's claim that FSMA violates due process by allowing only complainants to move actions to federal court mischaracterizes the statutory scheme. Ex. #10 demonstrates the proceedings include multiple levels of agency review to protect respondents' interests, while Ex. #10 confirms FSMA creates public and private reporting channels available to all participants (Ex. #10 pp.4-6, 22, MSJ p.12-13).

## IX.  LEGAL ARGUMENT OF CROSS-MOTION

Watts incorporates by reference all of his arguments as set forth above in his Opposition to MSJ.

## X.  CONCLUSION

In light of the well-established standard for summary judgment—that the moving party must demonstrate the absence of any genuine dispute as to any material fact and entitlement to judgment as a matter of law—and given that the parties have stipulated to all material facts and exhibits, this Court is afforded a clear and efficient path to decide this matter on its merits without the necessity of further factfinding.

Defendant Watts' opposition demonstrates that under the statutory framework of the Food Safety Modernization Act, any constitutional challenges to the administrative proceedings are categorically precluded from district court review until the issuance of a final agency order and subsequent appellate review. Moreover, Perdue's failure to timely assert its constitutional claims during the administrative process constitutes an effective waiver of those claims. These legal deficiencies render Perdue's Motion for Summary Judgment untenable and, conversely, establish a firm basis for granting Watts' Cross-Motion for Summary Judgment.

Dated: March 12, 2025

Respectfully Submitted,

/s/ *Stephani L. Ayers*

Stephani L. Ayers Washington State Bar #31610
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St., N.W., Suite 808
Washington, DC 20006
P: (813) 382-7865
stephani@whistleblowerdefenders.com

Attorneys for Defendant Craig Watts

/s/Gary W. Jackson
Gary W. Jackson
Law Offices of James Scott Farrin
555 S. Mangum Street, Suite 800
Durham, NC 27701
Phone: (919) 688-4991
gjackson@farrin.com
N.C. Bar No. 13976
Local Civil Rule 83.1(d) Attorney for Defendant
Craig Watts

## CERTIFICATE OF COMPLIANCE

1. This Opposition and Cross-Motion has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 12 point.

2. Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, this Opening Brief of Appellant contains 6,892 words.

Dated: March 12, 2025

/s/ *Stephani L. Ayers*
Stephani L. Ayers Washington State Bar #31610

## CERTIFICATE OF SERVICE

SERVED electronically by ECF and Email on the 12th day of March, 2025 on all counsel of record registered on the Court's ECF service.

/s/ *Stephani L. Ayers*
Stephani L. Ayers, Washington State Bar #31610